**James GODWIN, Defendant-Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 563, Docket 81–2303.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 12, 1982.

Decided July 30, 1982.

---

Mel A. Sachs, New York City, for defendant-appellant.

Michael L. Tabak, Asst. U. S. Atty., New York City (John S. Martin, U. S. Atty., and Robert S. Litt, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before OAKES, NEWMAN, and WINTER, Circuit Judges.

NEWMAN, Circuit Judge:

This appeal from a denial of a collateral attack upon a federal conviction illustrates the need for careful compliance with the requirements of Rule 11 of the Federal Rules of Criminal Procedure that the trial court must (a) inform the defendant and determine that he understands the nature of the charge to which the plea is offered, Rule 11(c)(1), and (b) satisfy itself that there is a factual basis for the plea, Rule 11(f).[1] James Godwin appeals from a judgment of the District Court for the Southern District of New York (Thomas P. Griesa, Judge) entered August 31, 1981, denying his motion under 28 U.S.C. § 2255 to vacate a five-year sentence resulting from Godwin's 1973 conviction upon a guilty plea before former Judge Harold R. Tyler, Jr. The 1973 indictment charged Godwin with conspiracy to sell or dispose of stolen art works moving in interstate commerce, in violation of 18 U.S.C. § 371. Judge Tyler suspended execution of the sentence and placed Godwin on probation for five years. The 1973 conviction assumed added significance in 1978 when Godwin was convicted on unrelated charges for which Judge Griesa sentenced him to a ten-year term. Judge Griesa also revoked Godwin's 1973 probation, imposed the five-year term that Judge Tyler had suspended, and ordered that the 1973 five-year sentence run consecutively to the 1978 ten-year sentence. Because we conclude that the 1973 guilty plea violated Rule 11 in respects cognizable on collateral attack, we reverse.

The 1973 count to which Godwin pleaded guilty charged that he conspired with co-defendant Paul Carter to sell $50,000 worth of art stolen from the Wellesley College Art Gallery. At the plea proceeding (and ever since) the Government and Godwin agreed on the essential facts of Godwin's role, but sharply disputed his state of mind, the Government contending that Godwin was unlawfully attempting to "fence" the stolen art, and Godwin contending that he was legitimately seeking to turn it in for a reward. Both sides agree that Carter, without any involvement by Godwin, stole the art and brought it from Massachusetts to New York. Carter then contacted his friend Godwin and said that he did not know what to do with some stolen art. Godwin arranged a meeting with an art dealer he knew, Professor Sigmund Rothschild. Unknown to Godwin, Rothschild was cooperating with the F.B.I. Carter and Godwin met with Rothschild and were arrested. At the plea proceeding Godwin asserted the following additional facts: Professor Rothschild was a customer of Godwin's limousine service, knew of his crimi-

---

1. In 1973, when the plea in this case was entered, Rule 11 read in pertinent part as follows:

    The Court may refuse to accept a plea of guilty, and shall not accept such plea ... without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. . . . The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea. The rule was considerably expanded in 1974, but retained the understanding of the charges and factual basis requirements essentially as they were, *see* Fed.R.Crim.P. 11(c)(1), (f).

nal record, and had told Godwin that if he ever heard about any stolen art work, he should contact Rothschild, and the art dealer would arrange to have the art work turned in for a reward. The Government made no representation that Rothschild disputed Godwin's version of his prior conversations with the art dealer.

At the plea proceeding in 1973, the District Judge and the prosecutor initially informed Godwin that he was being put to plea only on that portion of Count 1 of the indictment that charged a conspiracy to violate 18 U.S.C. § 2315, which concerns receiving stolen property. As set forth in paragraph 3 of Count 1, the indictment alleged: "It was further a part of said conspiracy that the defendants PAUL CARTER and JAMES GODWIN would receive, conceal, store, barter, sell and dispose of goods, wares and merchandise of a value in excess of $5,000, to wit, the works of art described in paragraph 2 herein which were moving as, were a part of and constituted interstate commerce from Wellesley, Massachusetts, to New York, New York, knowing the same to have been stolen, unlawfully converted and taken." As Judge Tyler explained to Godwin, "They are not accusing you of being up in Wellesley or moving the paintings down here. They are accusing you of being involved in storing, concealing and trying to fence or sell the goods here, see?"

Godwin explained his position as follows: "... what I'm saying is that we did not try to sell the stuff. I had no intention of selling it. I brought it over to this professor so he could return it to the museum, and there was supposed to be a reward for it."

Though alerted to Godwin's dispute concerning his state of mind, Judge Tyler responded with further explanation only of what Godwin was charged with doing: "Well, let me point out to you that paragraph 3 which I just alluded to a moment ago of Count 1 charges you with receiving, concealing, storing, bartering, selling and disposing of goods, wares and merchandise of a value in excess of $5,000, to wit, the works of art described in paragraph 2.

"Now, it would be sufficient if you just did one of those things, or if the government has evidence which was believed by the jury that you just did one of those things. Maybe you didn't offer to sell, but if you bartered or if you stored them or you received them or disposed of them or attempted to dispose of them, that would be sufficient...."

After further colloquy as to the status of Count 2, which charged interstate transportation of stolen property in violation of 18 U.S.C. § 2314, Godwin was asked by the Court whether he still desired to plead guilty and responded, "I have to plead guilty."

After explaining the maximum penalty and the rights waived by a guilty plea, Judge Tyler returned to the nature of the charge and the facts of the case: "[W]hat they [the prosecution] are going to prove is that you had something to do with handling, storing, perhaps bartering or perhaps offering these paintings to somebody in return for a reward or a price or something of that nature here in New York City."

At this point Godwin furnished the details of his version of Professor Rothschild's standing invitation to arrange to have stolen art work turned in for a reward if Godwin ever heard of any. Godwin quoted the professor as saying, " 'Listen, if you ever hear of any art or any pictures of value or anything like that, I have immunity from the Federal Bureau of Investigation,' he says, 'We would like to—if you do get this here we could turn this in and there is a reward for it. Not that you are doing anything criminal, but just that.' "

Judge Tyler then had Godwin acknowledge the details of a call from Carter informing Godwin of the stolen items from Wellesley, Godwin's suggestion to Carter that the items be turned over to Professor Rothschild, and the visit to the professor during which the arrest occurred. The only inquiry as to Godwin's state of mind concerned his knowledge that the art works were stolen. The prosecutor's only statement concerning a factual basis for the plea was the following: "I would simply like to

reaffirm the factual basis that Mr. Godwin has presented by representing that the government was prepared, indeed had prepared explicitly to try the case today to prove the charges contained in this count, and we were confident that we would do so beyond a reasonable doubt." The Court then observed, "I think those facts are more than adequate to support paragraph 3, the means paragraph of Count 1."

At that point, Godwin was formally put to plea. The clerk read an abbreviated portion of the indictment, which, for the first time, placed on the record the *mens rea* aspect of Count 1: "Mr. James Godwin, the charge is that you did unlawfully, wilfully and knowingly combine, conspire, confederate and agree with Paul Carter" to do what paragraph 3 alleged. Following this reading, Godwin pled guilty.

### Discussion

In order to assess Godwin's contentions that he was not adequately informed of the nature of the charge against him and that there did not exist a factual basis for a plea of guilty to that charge, we must consider the elements of the offense of receiving stolen property in the context of returning property for a reward. A violation of 18 U.S.C. § 2315 normally requires simply the act of receiving or disposing of stolen goods of the requisite value moving in interstate commerce, coupled with knowledge that the goods are stolen. A conspiracy to commit this offense normally requires only an agreement to commit the substantive offense, knowing participation in the conspiracy, and an overt act in furtherance of the conspiracy. However, the prospect of claiming a reward requires a more refined consideration of what constitutes a culpable state of mind. The common law definition of theft includes an intent to deprive the owner of his property, *see* Model Penal Code, § 223.2(1). In codifying the common law crime of receiving stolen property, the Model Penal Code recasts the element of

intent to deprive an owner of his property into an exception so that the offense is established by knowing possession of stolen property "unless the property is received, retained, or disposed with purpose to restore it to the owner." *Id.* § 223.6(1).[2] At common law possession with a purpose of restoring stolen property to its owner was not unlawful when a reward was sought, provided the reward was announced before the possession occurred and, of course, provided that the person claiming the reward had nothing to do with the theft. *Compare Wentworth v. Day*, 44 Mass. (3 Met.) 352 (1841) (no conversion where lost property found and returned after announcement of reward), *with Slaughter v. State*, 113 Ga. 284, 38 S.E. 854 (1901) (finder of property would be guilty of larceny if he conceals it for purpose of returning it after reward offered), *Commonwealth v. Mason*, 105 Mass. 163 (1870) (larceny where defendant kept owner's horse until reward offered), *Jenkins v. Kelren*, 78 Mass. (12 Gray) 330 (1859) (knowing possessor of stolen property not entitled to reward if possession occurred before offer of reward), *and Regina v. Peters*, 1 Car. & Kir. 243 (1843) (larceny where property found, held, and returned only after reward offered); *see Berry v. State*, 31 Ohio St. 219 (1877) (taking of property with intent to conceal it until reward offered is larceny); *Dunn v. State*, 34 Tex.Crim. 257, 30 S.W. 227 (1895) (same).

We think there can be no doubt that the federal offense of receiving stolen property defined by § 2315 incorporates the common law exception for possession with the purpose of restoring stolen property to the owner. And the exception applies when the purpose of restoring the property is accompanied by an expectation of a reward, provided the reward has been announced or is believed to have been announced before the property is possessed or agreed to be possessed.

2. As the Comment to § 223.6 explains, "Since a purpose to restore defeats conviction, and since the prosecution must establish beyond a reasonable doubt that the actor did not have such a purpose, the culpability required under Section 223.6 can properly be assimilated to a purpose to deprive the victim of his property." (p. 237).

■ With this understanding of § 2315 it is clear that Godwin was not adequately informed of the nature of the charge to which he pled guilty. Indeed, he was significantly misinformed. Once Godwin asserted his version of the events, the District Judge was obliged to inform him that he would not be guilty of the offense charged unless the Government could disprove his contention that he believed the owner had arranged through Professor Rothschild to offer a reward and that he intended to have the property turned over to the professor for return to the owner.[3] Instead of giving this explanation of the offense, Judge Tyler told Godwin that it would be sufficient for conviction if he received the stolen goods or disposed of them or attempted to dispose of them. The only explanation of the requisite state of mind Godwin received was hearing the allegation of the indictment that he knew the property was stolen. After this incomplete and incorrect advice it is entirely understandable that Godwin pled guilty and repeatedly acknowledged his guilt, since he had been told that the offense required only an attempt to dispose of the art works knowing that they had been stolen.

This is the unusual case in which advising the defendant of the traditional elements of the offense does not suffice, since the defendant's assertion of facts indicating an innocent state of mind required precise explanation of additional aspects of the intent necessary for conviction. Not surprisingly, the prior cases have not encountered this precise situation. In the usual case where the defendant needs to be advised of only the traditional elements of the offense, the issue of Rule 11 compliance frequently turns on whether reading the indictment suffices, with additional explanation required for the more complex offenses. *Compare United States v. Saft,* 558 F.2d 1073 (2d Cir. 1977) (reading indictment sufficient), *and Seiller v. United States,* 544 F.2d 554 (2d Cir. 1975) (same), *with Majko v. United States,* 457 F.2d 790 (7th Cir. 1972) (reading indictment insufficient). *See United States v. Dayton,* 604 F.2d 931, 942–43 (5th Cir. 1979) (*en banc*), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); *United States v. Wetterlin,* 583 F.2d 346, 350–51 (7th Cir. 1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979); *Irizarry v. United States,* 508 F.2d 960, 964–66 (2d Cir. 1974). In a case such as this, even a reading of the entire count of the indictment would not have sufficed; the truncated version that was read was plainly inadequate. The failure to provide an explanation of the requisite state of mind rendered the plea invalid under Rule 11(c)(1).

■ Godwin also contends that there was not a sufficient factual basis for his plea to warrant its acceptance under Rule 11(f).[4] Although Rule 11 specifies only that the

---

**3.** Godwin's version seems to indicate that Professor Rothschild had told him about a preexisting reward, at least a preexisting arrangement whereby museums had let the professor know that they stand ready to pay rewards for return of stolen art works. Of course, it is possible that Godwin simply thought he had an opportunity unlawfully to demand a reward that a museum had not announced but might be willing to pay. Perhaps Judge Tyler drew the latter conclusion. Even if Godwin was trying to extract a reward, rather than claim a preexisting one, explaining the nature of the charge in his case required clarification of this somewhat obscure but critical distinction.

**4.** Though the Rule 11(f) requirement of a factual basis for the plea is similar to the Rule 11(c)(1) requirement that the defendant understand the nature of the charges, the provisions serve distinct purposes, and each must be satisfied. In some cases the same circumstances may satisfy both requirements, a coincidence that sometimes obscures the distinction between the requirements. *Compare Irizarry v. United States,* 508 F.2d 960, 968 n.9 (2d Cir. 1974) (reading the indictment and obtaining defendant's admission not necessarily insufficient to establish factual basis for plea), *and Rizzo v. United States,* 516 F.2d 789, 794 (2d Cir. 1975) (same), *with Seiller v. United States,* 544 F.2d 554, 563 (2d Cir. 1975) (citing *Irizarry* footnote 9 and *Rizzo* in concluding that reading indictment and obtaining defendant's admission not necessarily insufficient to establish defendant's understanding of nature of charges).

The factual-basis requirement, often justified as an aid in determining that the plea is voluntary in the constitutional sense of being intelligent as well as uncoerced, *see Brady v. United States, supra,* 397 U.S. at 748; 8 *Moore's Federal Practice* ¶ 11.03[3], at 11–71 to –72 (1981),

court must be "satisfied" that the plea has a basis in fact, that factual basis must be developed on the record at the plea proceeding, *see e.g., Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *Rizzo v. United States*, 516 F.2d 789, 793 (2d Cir. 1975). This record requirement permits a reviewing court to determine that the trial court acted within its discretion in meeting the Rule's subjective standard. *United States v. Dayton, supra*, 604 F.2d at 938.

■ We have accepted a reading of the indictment to the defendant coupled with his admission of the acts described in it as a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal. *Kloner v. United States*, 535 F.2d 730, 734 (2d Cir. 1976), *cert. denied*, 429 U.S. 942, 97 S.Ct. 361, 50 L.Ed.2d 312 (1976); *see Rizzo v. United States, supra*, 516 F.2d at 794 (dictum); *Irizarry v. United States, supra*, 508 F.2d at 968 n.9 (dictum). However, if the defendant denies an element of the offense or generally maintains his innocence, the record must be augmented to establish a basis for the plea. *See, e.g., United States v. Wetterlin, supra*, 583 F.2d at 353; *United States v. Neel*, 547 F.2d 95, 96 (9th Cir. 1976) (*per curiam*); *Rizzo v. United States, supra*, 516 F.2d at 794.

■ In Godwin's case, the record does not reveal a factual basis from which the District Court could be satisfied of his guilt. Godwin's version of seeking a previously announced reward was essentially a denial of the intent element of the offense. Even if a detailed and factually specific indictment had been read, it would still have been necessary for the record of the plea proceeding to contain some indication from some source to support an inference that Godwin's intentions had not been innocent. On this point, the record is silent. At least in the face of a detailed version by the defendant, not merely alluding to a reward, but identifying the person who told him about it, the District Court could not properly be satisfied of Godwin's guilt without some basis for doubting his account. Further probing of Godwin's version might have revealed inconsistencies or other indications undermining his veracity; more directly, the prosecution could have determined whether Professor Rothschild, who was acting at the Government's request, had ever made the statements attributed to him. While a court considering a tendered guilty plea is not obliged to accept at face value every claim a defendant makes, the "factual basis" requirement means at least that when an essential element is factually disputed, some circumstances must appear on the record to warrant a conclusion that the defendant's innocent version is unworthy of belief.[5]

The failure to inform Godwin of the nature of the charges against him and the

---

also serves simply to test the factual accuracy of the plea. *See United States ex rel. Metz v. Maroney*, 404 F.2d 233, 236 (3d Cir. 1968) ("[A]n acceptable guilty plea ... implies an admission of conduct which, if proved, would warrant a verdict of guilty."), *cert. denied*, 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483 (1969); ABA Standards Relating to Pleas of Guilty 31 (Approved Draft 1968) ("[T]he risk that a [voluntary] plea might nonetheless be inaccurate remains a matter of concern.... A clearly rational defendant may enter a false plea in the hope of achieving some goal, as where an innocent defendant is seeking to protect another person."). In *United States v. Dayton*, 604 F.2d 931, 935 n.3 (5th Cir. 1979) (*en banc*), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980), Judge Gee poignantly illustrated the need for the factual-basis requirement, suggesting that it is intended to "avoid

a wrongful conviction, such as occurred in 'The Long Black Veil'," the ghostly song of an innocent man executed. Since the point of the illusion, may not be apparent, we set forth the pertinent verse:

> The Judge said, "Son, what is your alibi? If you was somewhere else, then you won't have to die."
> But I spoke not a word, though it meant my life,
> For I'd been in the arms of my best friend's wife.

5. Though it is logical to assume the truth of what a person denies (or the falsity of what he asserts) if persuaded that his denial (or assertion) is false, disbelief of a witness cannot satisfy a party's burden of proof. *Dyer v. MacDougal*, 201 F.2d 265, 269 (2d Cir. 1952). We need not apply the full rigor of that principle, which was announced in the context of the propriety

lack of a factual basis for his plea in light of his denial of criminal intent, were substantial defects undermining the validity of the plea. Such defects are not technical, *see United States v. Timmreck*, 441 U.S. 780, 785, 99 S.Ct. 2085, 2088, 60 L.Ed.2d 634 (1979), but are so fundamental as to cast serious doubt on the voluntariness of the plea, *see Mack v. United States*, 635 F.2d 20, 24 (1st Cir. 1980); *Alessi v. United States*, 593 F.2d 476, 478–79 (2d Cir. 1979). Even if a merely inadequate explanation of the nature of an offense might not warrant collateral attack in the absence of an indication that the defendant would not have pled guilty upon proper advice, *see United States v. Horsley*, 599 F.2d 1265 (3d Cir.) (*en banc*), *cert. denied*, 444 U.S. 865, 100 S.Ct. 135, 62 L.Ed.2d 88 (1979), the misleading explanation given to Godwin coupled with his unquestioned assertion of facts inconsistent with guilt establishes the prejudicial nature of the non-compliance with Rule 11.

Accordingly, the judgment is reversed, and the cause remanded with directions to grant the motion under § 2255, vacate the conviction, and afford Godwin the opportunity to plead anew or stand trial.

of not permitting a plaintiff to get to a jury on the strength of the inferred opposite of the version of adverse witnesses. A plea proceeding is not a mini-trial. But at least some circumstances must appear in the record to warrant belief in the opposite of a defendant's detailed version disputing an essential element of an offense.