The appellant, Pierce, was indicted by a two-count indictment for the first-degree sexual abuse of Penny Pierce, as proscribed by § 13A-6-66 (a)(1), Code of Alabama 1975 (Count I) and for the first-degree sexual abuse of Sherry Pierce, as proscribed by § 13A-6-66 (a)(3) (Count II).[1]
After disposal of various pre-trial motions, Pierce informed the trial court of his desire to plead guilty and filed a "MOTION TO ALLOW PLEA OF GUILTY PURSUANT TO AGREEMENT." The trial court then informed Pierce of the range of possible sentence and, also, his rights enunciated in Boykin v. Alabama,395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Pierce acknowledged that he understood the sentence range and his rights. In addition, he assured the court that no one had promised him any reward to plead guilty. Then, the following occurred:
"THE COURT: Tell the Court how you plead.
"THE DEFENDANT: Guilty.
"THE COURT: Now, tell me what you did. *Page 507 
 "THE DEFENDANT: I hugged my daughter. I might have touched her where I shouldn't have not knowing it.
"THE COURT: You touched her private parts.
 "THE DEFENDANT: I might have touched her top without realizing that I done it. Breast or whatever you want to call it.
"THE COURT: Is that all that occurred?
"THE DEFENDANT: Yes, sir.
 "THE COURT: I'm not going to take your plea. Let's get the jury in here.
"MR. CURLEE [District Attorney]: Wait just a minute.
"THE DEFENDANT: I didn't understand it.
"THE COURT: What did you do?
 "THE DEFENDANT: I hugged her, and I touched her private parts without meaning sexual — I just touched her private parts.
"THE COURT: All right. You fondled her.
 "THE DEFENDANT: I guess. I don't know what that means.
 "THE COURT: And you played with her private parts, did you not?
 "THE DEFENDANT: I didn't play with her. I might have touched them without, you know, with no sexual intent.
"THE COURT: Let's have a trial, ladies and gentlemen.
"THE DEFENDANT: I didn't — I didn't do it.
"THE COURT: Let's get the jury in and strike a jury.
"(Recess.)
"(Prospective jurors not present.)
 "THE COURT: Mr. Pierce, when you were before me just a few minutes ago, you said that you touched this young girl's private parts.
"THE DEFENDANT: Yes, sir.
 "THE COURT: And I asked you did you fondle. And that means play with it. Did you play with it?
"THE DEFENDANT: Yes, sir.
". . .
 "THE COURT: I am going to — have you been over all the facts in the case?
"MR. BOWERS [defense counsel]: Yes, Your Honor.
 "THE COURT: Do you recommend that the Court accept his plea of guilty?
"MR. BOWERS: Yes, Your Honor."
Thereupon, the court accepted Pierce's plea of guilty. On the same date, November 27, 1984, Pierce executed an "Ireland" form(Ireland v. State, 47 Ala. App. 65, 250 So.2d 602 (1971)).
On December 13, Pierce filed a pro se motion to change his plea, alleging that he was coerced by his attorney and requesting change of counsel. This motion was denied on December 14, but the court granted Pierce's counsel's motion to withdraw. On January 3, 1985, Pierce, through newly-appointed counsel, filed another motion to withdraw his guilty plea, wherein he alleged that he was not guilty of the offense for which he pleaded guilty and that his plea was not voluntarily and intelligently entered. On January 11, this motion was also denied. On March 8, 1985, Pierce was sentenced to imprisonment for a term of four years.
In attacking the voluntariness of his plea, Pierce contends that (1) his plea was not knowingly, intelligently, and voluntarily entered because he was not informed of the nature of the offense charged, and (2) that the trial court accepted his plea without a showing of a factual basis for the plea.
In determining if Pierce's plea was properly accepted by the trial court, we look to North Carolina v. Alford, 400 U.S. 25,91 S.Ct. 160, 27 L.Ed.2d 162 (1970), wherein the Court determined that a defendant may enter a valid plea of guilty while avowing innocence or refusing or unable to admit commission of the criminal act if the plea is voluntary and intelligently entered and there is a strong showing of actual guilt. Id. at 37-38, 91 S.Ct. at 167-168. In Alford, the defendant testified that he had not committed the murder, but that he was pleading guilty because, if not, he would be subjected to threat of the death penalty. *Page 508 Id. at 28, 91 S.Ct. at 162. We think that, because of the equivocal nature of Pierce's plea and his assertion of innocence, his plea is akin to an Alford plea, and, thus the requirements of Alford should have been met. See, e.g., Godwinv. United States, 687 F.2d 585 (2d Cir. 1982)[2] (wherein the court, reviewing the acceptance of a guilty plea pursuant to Fed.R.Crim.P. 11, determined that Alford applies when the defendant's version of the events constitute a denial of criminal intent); United States ex rel. Dunn v. Casseles,494 F.2d 397 (2d Cir. 1974) (wherein the court concluded thatAlford applies where "defendant's affirmative general statements that he did commit the crime were also offset by negative statements that he did not").
In regard to Alford's first requirement that the plea be voluntarily and intelligently entered, "[i]t is well established that a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless the accused has received `real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" Marshall v. Lonberger, 459 U.S. 422, 436,103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983) (quoting Smith v. O'Grady,312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed.2d 859 (1941)). "In a plea of guilty proceeding the judge should undertake a factual inquiry to determine if the plea is voluntarily made with an understanding of the nature of the charge. . . ." Davis v.State, 348 So.2d 844, 846 (Ala.Cr.App.), cert. denied,348 So.2d 847 (Ala. 1977). See also McCarthy v. United States,394 U.S. 459, 466, 89 S.Ct. 1166, 1170-71, 22 L.Ed.2d 418 (1969) ("[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts".)
The ruling espoused in Henderson v. Morgan, 426 U.S. 637,96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), governs our disposal of this issue.[3] There, Morgan was indicted for a violation of the New York statute proscribing first-degree murder, but he entered a plea of guilty to second-degree murder pursuant to a plea-bargaining agreement. Thereafter, Morgan sought release by writ of habeas corpus in federal court, contending that his plea had been involuntary because he had been unaware that intent to cause death was an element of murder in the second degree. In affirming the granting of the writ, the Court observed that "[w]ithout adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary [as an intelligent admission of guilt]." Id. at 645 n. 13, 96 S.Ct. at 2257 n. 13. In holding that a plea of guilty to a charge of second-degree murder will not support a judgment of guilt if the defendant is not informed that intent to cause death is an element of the offense, the Court noted the following:
 "There is no need in this case to decide whether notice of the true nature, or substance, of a charge always requires a description of every element[4] of the offense; *Page 509 
we assume it does not. Nevertheless, intent is such a critical element of the offense of second-degree murder that notice of that element is required."
Id. at 647 n. 18, 96 S.Ct. at 2258 n. 18.
Admittedly, the circumstances of Henderson are unique. Waldonv. State, 394 So.2d 100, 103 (Ala.Cr.App. 1981). In acknowledging that the totality of the circumstances should be considered in determining whether the substance of the charge, as opposed to its technical elements, was conveyed to the defendant, 426 U.S. at 644, 96 S.Ct. at 2258, the Henderson
Court observed the following: Morgan was "then 19 years old and substantially below average intelligence," id. at 642,96 S.Ct. at 2256; he was not advised by counsel of the required element of intent, id.; the indictment, in which he was charged with "willfully" stabbing the victim, was read in open court, id.;
he pleaded guilty to second-degree murder, not charged in the indictment, id.; in the direct colloquy with the trial judge, "[t]here was no discussion of the elements of the offense of second-degree murder, no indication that the nature of the offense had ever been discussed with [him], and no reference of any kind to the requirement of intent to cause the death of the victim," id. at 642-43, 96 S.Ct. at 2256-57; and the element of intent elevated the offense from manslaughter to second-degree murder, id. at 645, 96 S.Ct. at 2257-58.
In the instant case, during the direct colloquy, the trial court did not explain or inform Pierce of the elements of sexual abuse in the first degree. Furthermore, there was no testimony that Pierce's attorney had explained the elements and the "Ireland" form signed by Pierce contained no admission to the effect that his attorney had explained to him the elements of the crime and that he understood them. See, e.g., Russell v.State, 428 So.2d 131, 135 (Ala. 1982). Moreover, Pierce expressed no understanding of the charge. Finally, although, in a simple charge, a reading of the indictment will put the defendant on notice of the nature of the charge,[5] Paulson v.Black, 728 F.2d 1164, 1166 (8th Cir.), cert. denied, ___ U.S. ___, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984), the reading of the indictment alone would not have been sufficient in the instant case. In tracking the language of §§ 13A-6-66 (a)(1) and (3), Code of Alabama 1975, the indictment charged, under Count I that Pierce "did subject Penny Pierce to sexual contact by forcible compulsion" and, under Count II, that Pierce, "being sixteen years of age or older, did subject to sexual contact Sherry Pierce who was less than twelve years of age. . . ." Although the intent to gratify the sexual desire of either party is an element of sexual abuse, Parker v. State,406 So.2d 1036, 1039 (Ala.Cr.App.), cert. denied, 406 So.2d 1041 (Ala. 1981), it is not explicitly alleged in the indictment. Rather, it is encompassed in the definition of "sexual contact": "Any touching of the sexual or other intimate parts of a person not married to the actor, done for purpose of gratifying the sexualdesire of either party." Ala. Code (1975), § 13A-6-60 (3) (emphasis added). Thus, the instant case is unusual, for the element of intent was not set forth in the indictment which had been read to Pierce. See Henderson, 426 U.S. at 649 n. 2,96 S.Ct. at 2260 n. 2 (White, J. *Page 510 
concurring). With the totality of these circumstances before us, we cannot conclude that the substance of the nature of the charge, particularly the element of intent, had been conveyed to Pierce; however, we need not find this deficiency fatal unless we conclude that the element of intent is "critical" within the meaning of Henderson.
In declaring a particular element to be "critical" within the meaning of Henderson, courts have often rested this determination upon the fact that the unexplained element was one which elevated the degree and seriousness of the crime to which the plea was offered above some other offense. 2 W. LaFave and J. Israel, Criminal Procedure § 20.4 at 642-43 (1984). Although the element of intent is present in both degrees of sexual abuse and, thus, does not distinguish one degree from another, we nevertheless find the element "critical" in regard to the particular facts presented to the trial court. The facts with the most specificity, not cast in general terms, are revealed by Pierce's admission that while hugging his daughter, he touched her breasts without any sexual intent. In this case, the intent to gratify sexual desire could differentiate common affectionate behavior between a father and daughter from the criminal act of sexual abuse. This element is especially critical, since Pierce protested his innocence by proclaiming not only that "I didn't do it," but "I might have touched [her private parts] without, you know, with no sexual intent." Cf. Godwin v. United States, 687 F.2d at 589 ("This is the unusual case in which advising the defendant of the traditional elements of the offense does not suffice, since the defendant's assertion of facts indicating an innocent state of mind required precise explanation of additional aspects of the intent necessary for conviction").
When some of the elements of the offense are not stated, misunderstandings are likely to occur. United States v. Punch,709 F.2d 889, 894 (5th Cir. 1983) (determination of compliance with Fed.R.Crim.P. 11). "[W]henever this possibility [of misunderstanding] is present and the defendant before sentencing claims that it was a reality, the courts should be loath to deny an accused his right to trial." Id. (quotingUnited States v. Roberts, 570 F.2d 999, 1011 (D.C. Cir. 1977), aff'd, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980)). "[A] swift change of heart is itself strong indication that the plea was entered in haste and confusion." 709 F.2d at 895 n. 10 (quoting United States v. Barker, 514 F.2d 208, 222 (D.C. Cir.), cert. denied, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682
(1975)). Like those in Punch, Pierce's remarks may be construed as revealing his ignorance either that intent was an element of the offense or that the prosecution had the burden of proof of intent, and, at the very least, they reveal considerable confusion on his part. 709 F.2d at 895. This implication of confusion or ignorance is further strengthened by Pierce's two motions to withdraw his plea which were filed prior to his sentencing.
However, before we conclude that Pierce's plea was involuntary, we must consider the following comments by theHenderson Court:
 "Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. This case is unique because the trial judge found as a fact that the element of intent was not explained to respondent."
426 U.S. at 647, 96 S.Ct. at 2258-59. See also Marshall v.Lonberger, 459 U.S. at 435-37, 103 S.Ct. at 851-53 (1983) (wherein the 5-4 majority, holding that Lonberger had been informed of an attempted murder charge in the indictment, applied this presumption to the factual determinations arising from the records of the State court proceedings, which were, as follows: the *Page 511 
contents of the State records which reflected his counsel's stipulation that the indictment sustained the plea, the judge's reference to his plea covering an "attempt on Dorothy Maxwell, with a knife," and the indictment's averment of only one attempted murder charge; the finding of the trial court that Lonberger was "an intelligent individual, well experienced in the criminal processes and well represented in all stages of the proceedings by competent and capable counsel"; the similar conclusion of the State appellate court; and the inferences fairly deducible from these facts).
It has been observed that "[t]hough lower courts have sometimes entertained such a presumption in order to defeat a defendant's Henderson claim, this is a highly questionable result." 2 W. LaFave and J. Israel, supra, at 644 (footnote omitted) While we recognize that under some circumstances the operation of this presumption is desirable and appropriate, in regard to the instant case, we agree that such application would be "a highly questionable result." Although the trial judge has not found as a matter of fact that the element of intent was not explained to Pierce, we find that the instant case falls outside "most cases" wherein the presumption "may be appropriate." We have no facts before us to fairly support such an application of the presumption that Pierce's counsel adequately informed him of the nature of the offense of first-degree sexual abuse. In Atteberry, 448 So.2d 425 at 428, the court refused to resort to the presumption announced inHenderson and reaffirmed in Marshall to uphold a guilty plea. In doing so, the court observed:
 "In the case sub judice, the colloquy is inadequate for any purpose; there is no stipulation by defense attorney [that the indictment was sufficient both in law and fact]; the `Ireland' form contained no reference to the elements or nature of the offense; and the judgment entry likewise contains no reference to the nature of the offense or to Atteberry understanding his constitutional rights. Under these circumstances we hold that this case falls outside the scope of Marshall. . . ."
Compare Waldon v. State, 394 So.2d 100, 103 (Ala.Cr.App. 1981) (wherein the court determined that, under the circumstances — the defendant was arraigned on a proper indictment and had heard witnesses testify to the specific criminal acts with which she was charged — "it is appropriate to presume" that she knew of the nature of the offense), and Stinson v.Wainwright, 710 F.2d 743 (11th Cir.), cert. denied,464 U.S. 984, 104 S.Ct. 430, 78 L.Ed.2d 363 (1983) (wherein the court applied Henderson and Marshall to circumstances which included the representations by defense counsel that the nature of the offense had been explained to the defendant). We are offered no persuasion as to why Atteberry would not control our disposal of the instant facts, and we conclude that there is no distinction. Moreover, we find of paramount and overriding importance the established principle that the record must disclose that the defendant voluntarily and understandingly entered his plea of guilty. Boykin v. Alabama, 395 U.S. at 244
and n. 7, 89 S.Ct. at 1712 and n. 7. Cf. McCarty v. UnitedStates, 394 U.S. at 464-65, 89 S.Ct. at 1169-70 (wherein the Court rejected the Government's argument that the district court, taking a Rule 11 plea, could assume that the defendant was entering that plea with an adequate understanding of the charge against him).
Accordingly, we hold that the record fails to reveal that Pierce received "real notice of the true nature of the charge against him" and that, therefore, his plea did not represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." Alford, 400 U.S. at 31,91 S.Ct. at 164.
Thus, we need not determine whether the facts presented to the trial court during the colloquy were sufficient to establish a factual basis for finding that Pierce's conduct constituted the crime charged. However, we reiterate the following: *Page 512 
 "Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea . . . and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence."
Alford, 400 U.S. at 38 n. 10, 91 S.Ct. at 167 (citations omitted). See, e.g., Luke v. State, 439 So.2d 804 (Ala.Cr.App. 1983). The United States Court of Appeals for the former Fifth Circuit followed this reasoning in Willett v. Georgia,608 F.2d 538, 540 (5th Cir. 1979), and concluded, "In the face of a claim of innocence a judicial finding of some factual basis for defendant's guilt is an essential part of the constitutionally-required finding of a voluntary and intelligent decision to plead guilty." However, the court noted, "We require only a showing of some factual basis for the defendant's plea, not proof of every element of the offense beyond a reasonable doubt, for the acceptance of a guilty plea in the face of protestations of innocence." Id. at 541 n. 3. The purpose of a factual predicate was explained in Wallace v.Turner, 695 F.2d 545, 548 (11th Cir. 1983), as follows:
 "[T]he purpose of placing the facts on the record is not to establish guilt as a basis for a judgment of conviction. Rather it is to aid in the constitutionally required determination that the defendant entered the plea intelligently and voluntarily. . . . A factual basis demonstrates a defendant's recognition — despite his denial of guilt — that the evidence negates his claim of innocence, he has nothing to gain by a trial, and much to gain by pleading guilty." (Citations omitted.)
The trial court need not develop the factual basis from the defendant personally; as long as a factual basis is established on the record, it may come from several sources. Yamada v.State, 426 So.2d 906, 909 (Ala. 1982); McCurley v. State,455 So.2d 1014, 1015 (Ala.Cr.App. 1984); Young v. State,408 So.2d 199, 201 (Ala.Cr.App. 1981). See Atteberry, 448 So.2d at 427
(Ala.Cr.App. 1983) (where the court listed several methods to establish the required factual basis).[6]
For the reasons stated above, we reverse and remand this cause with instructions to vacate the judgment of guilt on Pierce's plea of guilt and to restore this cause to the proper docket for lawful disposition.
REVERSED AND REMANDED.
All Judges concur.
[1] Although the indictment charges Pierce with the commission of two offenses, the parties and the trial court speak of the plea in terms of only one offense; however, they do not specify the count to which they are referring.
[2] Fed.R.Crim.P. 11 (c)(1) presently provides that a federal court, before accepting a guilty plea or a plea of nolo contendere, "must address the defendant personally in open court and inform him of, and determine that he understands, . . . the nature of the charge to which the plea is offered. . . ." Although the plea in Godwin was entered prior to the Rule's amendment in 1974, the prior rule also contained a requirement of understanding the charges. While we recognize that the terms of Fed.R.Crim.P. 11 are not constitutionally applicable to the states, Young v. State, 408 So.2d 199, 200 (Ala.Cr.App. 1981), we find Godwin and subsequently cited opinions helpful and appropriate in the instant case.
[3] The opinion was authored by Justice Stevens; four Justices joined in a concurring opinion and two Justices dissented.
[4] However, our supreme court in Russell v. State,428 So.2d 131, 135 (Ala. 1982), stated, "The decisions of our courts indicate that the defendant must be fully informed of all the elements of the offense." This could mean that the defendant must be informed of the substance of the charge rather than be read by "a ritualistic litany . . . the formal legal elements of an offense." Henderson, 426 U.S. at 644, 96 S.Ct. at 2257.
 "State trial courts need not specifically address each individual element required under a state statute in order to accept a guilty plea. . . . The judge need only explain the statute sufficiently to give the defendant real and adequate notice of the nature of the charge against him or find proof that the defendant in fact understood the charge."
Moore v. Balkcom, 716 F.2d 1511, 1525-26 (11th Cir. 1983), cert. denied, 465 U.S. 1084, 104 S.Ct. 1456, 79 L.Ed.2d 773
(1984) (citations omitted).
[5] Whether or not Pierce was read the indictment at arraignment is unclear, for the case action summary indicates that Pierce waived the reading of the indictment, but the judgment entry states that Pierce was "arraigned on the indictment." Our Supreme Court has commented that, although a defendant waives a reading of the indictment, he is nonetheless charged with knowledge of its contents. Russell v. State, 428 So.2d at 135.Compare Atteberry v. State, 448 So.2d 425 (Ala.Cr.App. 1983), (where the court concluded that the judgment entry's statement that the defendant was "duly arraigned" upon an indictment did not establish a factual basis for a plea).
[6] Although Atteberry notes that, when the offense is simple and specific, the factual basis may be satisfied by a reading of the indictment, the court in Godwin recognized an exception to this principle: "[I]f the defendant denies an element of the offense or generally maintains his innocence, the record must be augmented to establish a basis for the plea." 687 F.2d at 590. The record must contain some indication from some source to warrant a conclusion that the defendant's detailed version disputing an essential element is unworthy of belief. Id. at 590-91. See also United States ex rel. Dunn v. Casseles,494 F.2d 397 (2d Cir. 1974).