**UNITED STATES of America, Appellee,**

v.

**Rodney Ralph CALKINS, Appellant.**

**No. 89–2093.**

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1990.

Decided June 25, 1990.

---

William R. McKinney, Jr., Amarillo, Tex., for appellant.

Thomas M. Larson, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Rodney Ralph Calkins appeals his conviction for possessing stolen property valued at $5,000 or more which had traveled through interstate commerce in violation of 18 U.S.C. § 2315 (Supp. V 1987). He raises multiple issues on appeal, including a challenge to the finding of probable cause to arrest, admission of hearsay testimony and various jury instructions. We affirm.

## I. BACKGROUND

On September 24, 1988, a robbery occurred at the Amarillo, Texas home of Bertha Lee and her granddaughter, Brenda Karyl Lee. Property taken included silverware, oriental rugs, crystal and several pieces of furniture. At the time, both Bertha and Brenda Lee were away from home

on a vacation. While away, they had entrusted a set of house keys to their handyman, Sam Riley, who is defendant Calkins' stepson.

After the robbery, Brenda Lee hired a private investigator and told several individuals, including Riley, that she would pay a $10,000 reward for return of the property. Brenda also told only Riley that she would be willing to offer up to $40,000 as a reward.

In mid-October 1988, Brenda Lee began receiving a series of telephone calls from a male individual who remained anonymous, offering to return the stolen property in exchange for $40,000. After the first phone call, Brenda Lee recorded the remaining phone calls. On October 31, 1988, the anonymous caller instructed Brenda Lee to travel to Kansas City, Missouri that day and communicated arrangements for an exchange of property and reward to take place in Independence, Missouri.

The FBI monitored this last phone call, traced it to Calkins' motel room in Independence, Missouri and arranged for surveillance of the proposed meeting site. The FBI agents then observed Calkins at the meeting site and tracked him from the meeting site to a nearby public storage facility. There they arrested Calkins and co-defendant Terry Osborne as both stood next to the stolen property.

A grand jury subsequently indicted Calkins and Osborne on one count each of possessing stolen property in violation of 18 U.S.C. § 2315. Calkins moved to suppress the evidence seized in his arrest, alleging that because the arrest was not based on probable cause, any consent given to search the property was invalid. After an evidentiary hearing, the magistrate[1] recommended denying the motion, concluding that probable cause existed to support the arrest and that Calkins had consented to the search.

1. The Honorable John T. Maughmer, United States Magistrate for the Western District of Missouri.

2. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

The district court[2] adopted the magistrate's findings of fact and conclusions of law and denied the suppression motion. Trial began on February 21, 1989. During a jury recess, Bertha Lee took the stand to determine her competency as a witness. The district court found that she was unable to communicate to the extent necessary to be a competent witness because she had recently suffered a stroke which impaired her ability to communicate. The district court granted a one week continuance. Contemporaneously, the Government advised the court and counsel that it would rely on the residual hearsay exception of Federal Rules of Evidence 803(24) and 804(b)(5) to admit Brenda Lee's testimony that her grandmother, Bertha Lee, owned the property at issue.

Trial resumed on February 27, 1989 and the jury returned a guilty verdict against Calkins but acquitted Osborne. The district court sentenced Calkins to sixteen months in prison followed by a three-year period of probation. Calkins moved for a new trial, raising the same issues as present in this appeal. The district court, however, denied the motion.

Calkins now appeals, contending the district court erred in: (1) determining the existence of probable cause and consent to search; (2) admitting testimony under the residual hearsay exception; (3) admitting other crimes evidence; (4) misinstructing the jury; and (5) denying his motion for judgment of acquittal.[3]

## II. DISCUSSION

### A. Probable Cause And Consent To Search

Calkins challenges the probable cause determination, arguing that the facts as known by the FBI agents did not rise to the level of probable cause but merely

3. Calkins also argues that the district court committed prejudicial error in permitting the jury to hear a portion of a recorded telephone call which contained a reference to Brenda Lee passing a polygraph test. We reject this argument as meritless.

amounted to a suspicion of criminal wrong-doing.

■ The district court's determination of probable cause in this case is subject to the clearly erroneous standard of review. *United States v. McGlynn,* 671 F.2d 1140, 1143 (8th Cir.1982). Probable cause to make a warrantless arrest exists when the facts and circumstances within the collective knowledge of the agents involved are sufficient to warrant a prudent person in believing that the suspect has committed or is committing an offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Wajda,* 810 F.2d 754, 758 (8th Cir.), *cert. denied,* 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).

■ After carefully reviewing the record, we conclude that adequate evidence exists to support the probable cause determination.[4] Accordingly, the district court did not clearly err in determining that probable cause existed to arrest Calkins.

■ Calkins also challenges the district court's determination that he validly consented to searches of the storage area, his van and his motel room. An individual may validly consent to a search if, in the totality of the circumstances, the consent is freely and voluntarily given and is not the product of coercion. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *United States v. Archer,* 840 F.2d 567, 572–73 (8th Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 354 (1988). Whether the consent to search is voluntary is a question of fact which will not be disturbed unless clearly erroneous. *Archer,* 840 F.2d at 573.

Here, the thrust of Calkins' argument is that any consent given is tainted by his illegal arrest. This argument must fail, however, in light of our conclusion that

probable cause existed to support the arrest. Furthermore, the record sufficiently supports the conclusion that Calkins' consents were made voluntarily. Accordingly, the district court did not clearly err in admitting the evidence seized at his arrest.

**B. Evidentiary Matters**

**1. Residual Hearsay Exception**

■ Calkins contends the district court abused its discretion in admitting Brenda Lee's testimony that her grandmother, Bertha Lee, had made statements asserting ownership over the property at issue. He claims the district court failed to consider the elements required for admission of this evidence under the residual hearsay exception of Federal Rules of Evidence 803(24) or 804(b)(5) and that more probative evidence of ownership should have been admitted, namely, insurance policies issued on the stolen property.

Rules 803(24) and 804(b)(5) contain identical provisions for the admission of hearsay testimony, with the exception that Rule 803(24) applies when the declarant is available whereas Rule 804(b)(5) applies when the declarant is unavailable. Under both Rules, the same standards and evidentiary principles apply. *United States v. Carlson,* 547 F.2d 1346, 1353 n. 3 (8th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). We refer to Calkins' challenge as one made under Rule 804(b)(5), inasmuch as the grandmother, because of her disability, must be deemed unavailable.

Rule 804(b)(5) provides for admission of hearsay statements which do not fall within other hearsay exceptions provided the elements of the Rule are met:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court deter-

---

4. The record indicates that the agents knew of: (1) Calkins' relationship to Riley and Riley's access to the Lee home at the time of the burglary; (2) the contents of the recorded telephone calls; (3) the tracing of the phone calls to a motel room in Independence, Missouri registered to Calkins; (4) the information gathered from surveillance of the meeting site and public storage facility; and (5) Calkins' presence next to property believed to meet the description of the property stolen from the Lee home. This evidence sufficiently supports the determination of probable cause.

mines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed.R.Evid. 804(b)(5).

A review of the legislative history to this Rule reveals Congress' intention that the Rule be limited in scope and narrow in focus:

> The committee believes that there are certain exceptional circumstances where evidence which is found by a court to have guarantees of trustworthiness equivalent to or exceeding the guarantees reflected by the presently listed exceptions, and to have a high degree of prolativeness [sic] and necessity could properly be admissible.
>
> . . . .
>
> It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances. The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b). The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by legislative action. It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care, reflection and caution than the courts did under the common law in es-

tablishing the now-recognized exceptions to the hearsay rule.

S.Rep. No. 1277, 93rd Cong., 2d Sess., *reprinted in,* 1974 U.S.Code Cong. & Admin. News 7051, 7065–66. This court has previously recognized the limits of this Rule and has strictly construed its requirements. *United States v. Woolbright,* 831 F.2d 1390, 1396 (8th Cir.1987).

Contrary to Calkins' assertion in this case, the record indicates that the district court considered the elements of the residual hearsay exception before admitting the evidence. Furthermore, the record supports a conclusion that these elements, including probativeness, were met. *See United States v. Dorian,* 803 F.2d 1439, 1443 (8th Cir.1986).

■ Calkins further argues that the evidence should have been excluded because he did not receive adequate notice of the Government's intent to use this hearsay testimony. The record reveals that it was not until the day before trial began that the Government learned of the extent of Bertha Lee's impairments. The Government promptly notified the court and Calkins' counsel of these impairments the following day. The district court decided to proceed with jury selection and then conduct a competency inquiry out of the presence of the jury. It did so, made an incompetency determination and granted Calkins' motion for a continuance. At that time, the Government informed Calkins' counsel and the court that it intended to rely on the residual hearsay exception to admit Brenda Lee's testimony. It filed a motion to that effect two days later. During the intervening week, Calkins' counsel prepared a memorandum of law opposing the motion. When trial resumed, the court held arguments on the motion before ruling from the bench.

We conclude that Calkins received sufficient notice of the Government's intent to offer this evidence and an opportunity to contest the use of this evidence. *Carlson,* 547 F.2d at 1355 (lack of pretrial notice does not bar admission under Rule 804(b)(5) if notice is given during trial and opportunity is provided to contest use of the testimo-

ny). We, therefore, reject Calkins' further argument relative to admissibility of this evidence.

### 2. Other Crimes Evidence

■ Calkins argues the district court erred in admitting other crimes evidence in violation of Federal Rule of Evidence 404(b). Specifically, Calkins objects to admission of the testimony of one Arthur Sievert who stated that credit cards and a driver's license found in the search of Calkins' motel room belonged to Sievert and were taken without his permission. This testimony revealed that Sievert's driver's license had been altered to show Calkins' picture. Calkins claims these pieces of evidence served to tell the jury that Calkins had stolen Sievert's driver's license and credit cards. He asserts that this evidence bears no relationship to the crime charged and was introduced solely to prejudice the jury against him.[5]

■ Under Rule 404(b), evidence of other crimes may not be admitted to prove an accused's criminal disposition. This evidence is admissible, however, if it is relevant to a material issue other than character, is more probative than prejudicial, is similar in kind and close in time to the crime charged and is subject to proof by a preponderance of the evidence. *United States v. Kandiel*, 865 F.2d 967, 972–73 (8th Cir.1989). The district court's decision to admit this evidence requires reversal only if the evidence does not bear on any issue involved at trial. *Id.* at 972; *see also, United States v. Gustafson*, 728 F.2d 1078, 1083 (8th Cir.) (trial court vested with broad discretion to admit other crimes evidence), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984).

Here, the evidence of the driver's license and credit cards directly related to the crime at issue. Evidence in the record indicates that the storage area where the stolen property was found had been rented

to a "Rod Sievert." Further, Calkins' possession of the altered driver's license and credit cards is consistent with the argument that Calkins attempted to identify himself as "A.R. Sievert." Accordingly, the district court did not err in admitting this evidence.

### C. Jury Instructions

Calkins contends the district court misinstructed the jury on his defense and failed to use his proffered instructions. Having reviewed the instructions given, we determine that they adequately covered the elements of the crime charged and accurately stated the law. We comment only on one issue, the common law exception to § 2315 liability.

■ The common law exception to the federal offense of receiving stolen property provides that an individual is not guilty of the offense if the purpose of possession is to restore the stolen property to its owner. *Godwin v. United States*, 687 F.2d 585, 588 (2d Cir.1982). This exception applies when the purpose of restoring property is accompanied by an expectation of a reward, provided the reward has been announced or believed to have been announced before the property is possessed or agreed to be possessed. *Id.*

In this case, the district court gave the following instruction:

> A person may possess goods he knows to be stolen goods, and yet not be guilty of an offense if he possesses the goods for a wholly innocent purpose such as to turn over the goods to the rightful owner. This is so even when the purpose of restoring the property is accompanied by an expectation of a reward, provided the reward has been announced or is believed to have been announced before the goods are possessed or agreed to be possessed, and, of course, provided that the

---

5. Calkins also objects to the district court's admission of a surveillance photograph of Calkins standing before an automatic teller machine in Independence, Missouri. He asserts that the photograph implicates that he was involved in another crime, e.g., using Mr. Sievert's credit cards without his permission. We reject this argument because the photograph does not constitute other crimes evidence, but merely demonstrates that the FBI had Calkins under surveillance on the day in question, October 31.

person expecting the reward had nothing to do with the theft.

However, as soon as a person knows that goods in his possession are stolen, he is obligated to immediately and unconditionally turn over the goods to the rightful owner or to law enforcement officials. A person who knowingly possesses stolen goods has no right to demand compensation or a reward from the owner as a condition to returning the goods, and he may not withhold or conceal the goods until a reward is made available. There is a distinction between hoping for or expecting a reward upon restoration of stolen property (which may be consistent with innocent possession) and unlawfully withholding or failing to restore stolen property until a reward is paid or made available.

 Calkins challenges the second paragraph of this instruction as having no basis in law. We disagree. The theft statutes of Missouri, where the property was found, and Texas, where the property was stolen from, define theft in terms of deprivation of property for the purpose of restoring the property only upon payment of a reward or other compensation. Mo.Rev. Stat. § 570.010(7)(b) (1986); Tex. Penal Code Ann. § 31.01(3) (Vernon 1989); *accord, State v. Simonson*, 298 Minn. 235, 214 N.W.2d 679, 681–82 (1974). The second paragraph adequately incorporates these applicable state theft definitions without contradicting the content of the first paragraph based on the *Godwin* case. Accordingly, the district court did not err.

### D.  Motion For Acquittal

Finally, Calkins contends the district court erred in denying his motion for judgment of acquittal based on the common law exception to § 2315 liability and his alleged lack of criminal intent.

 Our review of the district court's denial of an acquittal motion requires us to view the evidence in the light most favorable to the Government, giving the Government the benefit of all reasonable inferences which may be drawn. *United States v. Adkins*, 842 F.2d 210, 212 (8th Cir.1988).

Under this standard, a judgment of acquittal will be granted only if a reasonably-minded jury would possess a reasonable doubt relating to the existence of any essential element of the crime. *Id.*

 Here, the evidence shows that Calkins: (1) knew the property was stolen; (2) knew the property had crossed state lines; (3) knew the property was valued over $5,000; (4) knew who had committed the theft; (5) was acting on behalf of those individuals holding the property; (6) was negotiating the price of the reward in exchange for the property; and (7) required cash payment of the reward. This evidence sufficiently supports the district court's denial of the motion of acquittal.

### III.  CONCLUSION

Accordingly, we affirm the judgment of the district court.