Filed 3/6/14  P. v. Jones CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT NATHANIEL JONES,<br><br>    Defendant and Appellant. | 2d Crim. No. B245166<br>(Super. Ct. Nos. 2012021030, 2012017978)<br>(Ventura County) |

Robert Nathaniel Jones appeals from the judgments entered in two cases: Ventura County Superior Court Case Nos. 2012021030 (case A) and 2012017978 (case B).  In case A appellant was convicted by a jury of felony receiving stolen property (Pen. Code, § 496, subd. (a))[1] and two misdemeanors: possession of an injection device (Health & Saf. Code, § 11364.1, subd. (a)) and giving false information to a police officer (§ 148.9, subd. (a)).  After his conviction, the court conducted a bifurcated jury trial on enhancement allegations that appellant had served three prior separate prison terms. (§ 667.5, subd. (b).)  The jury found the allegations true.  Appellant was sentenced to prison for six years on the felony offense with the enhancements.  He was sentenced to a consecutive term of one year for the two misdemeanors.  Accordingly, appellant's aggregate sentence in case A is seven years.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

In case B appellant had been placed on probation after pleading guilty to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and admitting allegations of three prior prison terms. (§ 667.5, subd. (b).) Concurrently with the jury trial in case A, the court heard an alleged violation of probation in case B. The court found appellant in violation of probation. It revoked probation and sentenced him to 240 days in county jail, to be served consecutively to the sentence imposed in case A.

During the jury trial, appellant was in custody and represented himself. He contends that (1) he did not voluntarily and intelligently waive his right to counsel, (2) his constitutional rights to self-representation and due process were violated because he was denied reasonable access to a telephone for the purpose of contacting witnesses, (3) the trial court erroneously failed to instruct sua sponte on the defense of innocent intent, (4) the prosecutor engaged in misconduct, and (5) he was denied his right to counsel at sentencing.

We modify the judgment to strike a $25 registration fee imposed pursuant to section 987.5, subdivision (a). As modified, we affirm.

<em>Facts</em>[2]

At about 3:30 a.m. Officer Jeff O'Brien received a call that a woman had seen a man at her window. O'Brien drove to the location and saw appellant. O'Brien got out of his patrol vehicle and asked appellant to identify himself. Appellant gave a false name. O'Brien conducted a pat-down search of appellant. In his pants pocket O'Brien found two blank checks in the name of "a Mr. Schumacher." Appellant said that he had found the checks in a parking lot or on the street. About two days earlier, the checks had been stolen from Schumacher's vehicle. Inside appellant's duffel bag, O'Brien and another officer found a Colorado driver's license, a bank statement, and credit cards in the name of Vicki Bartson. Within the previous two days, these items had been stolen from Bartson's vehicle. The police also found a bank statement in Schumacher's name and a Department of Motor Vehicles printout that was not in appellant's name.

---

[2] We summarize only the facts pertaining to case A.

2

The police questioned appellant about the items found in his possession. Appellant said that they had been stolen by a friend named Holly Legarde. Two days earlier, he had gone through Legarde's "bag" and had removed the stolen items because "[h]e knew that they were stolen." He did not explain why he had held on to the items for two days instead of turning them over to the police. Appellant said that he had been trying to contact Officer Coffee and had twice telephoned Coffee's office. The arresting officers contacted Coffee, who said "that he was working a case that had to do with somebody who stole a purse." The "somebody" was Holly Legarde, and Coffee was trying to talk to appellant about the matter.

During a booking search after appellant's arrest, a syringe was found in his shoe.

*Waiver of Right to Counsel: Alleged Failure to Advise*

*Appellant of the Charges and Maximum Sentence*

Appellant contends that he did not voluntarily and intelligently waive his right to counsel because the trial court failed to advise him of the charges and maximum sentence in case A. The court correctly informed appellant that the maximum sentence was six years on the felony offense with the enhancements. But it did not inform him that he could be sentenced to an additional one year for the two misdemeanors, increasing his maximum sentence in case A to seven years. Appellant argues that "the court failed to fully advise [him] of the charges by ignoring the two misdemeanor offenses."

"Pursuant to the Sixth Amendment of the federal Constitution, a defendant has the right to conduct his or her own defense, providing he or she knowingly and intelligently waives the right to counsel [citation] . . . ." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1363.) "In order to make a valid waiver of the right to counsel, a defendant 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [Citation.]' [Citation.] No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation; the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.

3

[Citations.]" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1070.) "On appeal, we examine de novo the whole record . . . to determine the validity of the defendant's waiver of the right to counsel. [Citation.]" (***Ibid***.)

Here, the record establishes a valid waiver of appellant's right to counsel. The trial court orally advised appellant at length of the dangers and disadvantages of self-representation. In addition, appellant signed a "Waiver of Attorney" form that contained the requisite advisement. Appellant answered "Yes" to the following question in the form: "Do you understand everything on this form, including your rights, and the dangers of not having a lawyer?" The advisement was not inadequate merely because the trial court was off by one year on the maximum sentence and did not mention the misdemeanors. The one year difference was immaterial. It is reasonable to infer that appellant was aware of the misdemeanors because before waiving counsel he twice entered not guilty pleas to them: once when the original information was filed and again when the information was amended.

*Waiver of Right to Counsel: Alleged Denial*
*of Reasonable Access to a Telephone*

Appellant argues that he did not voluntarily and intelligently waive his right to counsel because he "was not informed that he would be denied reasonable access to the telephone to prepare for trial." (See *People v. Jenkins* (2000) 22 Cal.4th 900, 1040 ["a defendant who is representing himself or herself may not be placed in the position of presenting a defense without access to a telephone . . . or any other means of developing a defense"].) The facts underlying his argument are as follows: On September 6, 2012, the trial court granted appellant's request for an order requiring the Sheriff to provide him access to a telephone so that he could contact witnesses for the trial, which was scheduled to begin the next day. Appellant said that he wanted to contact three witnesses in Los Angeles County and three in Ventura County. He did not identify the witnesses by name.

On September 7, 2012, a Friday and the last day to begin trial, appellant said that he had not been allowed to use the telephone. The court expressed concern that, if it proceeded to trial in these circumstances, "we're going to . . . have a reviewing court

4

conclude that [appellant] was not given an opportunity to notify his witnesses." The court ordered that appellant be permitted to make up to 10 calls into the Los Angeles area, each call not to exceed 15 minutes.

The prosecutor offered to continue the trial to give appellant adequate time to "call your witnesses or have more time to examine the evidence that you've been supplied this morning." Appellant declined the prosecutor's offer and said that he "[a]bsolutely" wanted "to proceed to trial today." When the court said that it would grant a request for a continuance, appellant replied, "I'm not asking for a continuance. I'm asking for a dismissal . . . ."

The court summoned a jury panel. Before the jurors entered the courtroom, appellant stated, "you know what, can I still ask for a continuance?" The court inquired why he needed a continuance. Appellant responded that he had just received documents from the prosecutor and needed time to review them. The court refused to continue the trial on this ground. It noted that appellant had been "given the [documents] before we called up the jury." Appellant did not say that he wanted a continuance because he needed time to contact his witnesses.

On Monday morning, September 10, 2012, appellant said that over the weekend he had not been allowed to telephone his witnesses. The court stated that it would take a "two-and-a-half-hour" lunch break, during which appellant would be allowed to use the telephone. Appellant thanked the court. He made three telephone calls during the lunch break.

In the afternoon on September 10, 2012, the People rested. The trial court told appellant that the following morning he would have the opportunity to call witnesses to testify on his behalf. Appellant replied that he had not been able to contact his witnesses. The following morning appellant did not call any witnesses and declined to testify.

Appellant maintains that his waiver of counsel was invalid because it "was based on a reasonable expectation that he would be given access to the telephone . . . to prepare for trial," and this expectation was not met. Appellant has forfeited or waived this argument for two reasons. First, on September 7, 2012, he did not accept the prosecutor's

5

and court's offer of a continuance to allow him time to telephone his witnesses. (See *Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 182, fn. 32 ["by failing to request a continuance to conduct discovery in the trial court," plaintiffs waived the argument "that they should have been permitted to conduct further discovery"].) Second, on September 10, 2012, appellant did not request additional time to telephone his witnesses after he was unable to contact them during the two-and-one-half hour lunch break. It is reasonable to infer that the court would have granted a one-day recess if appellant had asked for it. The trial was ahead of schedule. It was Monday, the People had rested, and the trial court had told the jurors that their service would be completed "by the end of business this coming Friday."

If appellant's argument were not waived, we would reject it on the merits. Appellant refused to identify the witnesses whom he had been unable to contact and did not make an offer of proof as to their expected testimony. Appellant has therefore not shown that he was prejudiced by the alleged denial of reasonable access to a telephone. (See *People v. Lint* (1960) 182 Cal.App.2d 402, 421 ["There was no offer o[f] proof made and as a consequence there is nothing in the record before us upon which we can determine whether [the] exclusion [of an absent witness's former testimony] prejudiced the rights of the appellant"].)

*Right to Self-Representation and Due Process:*

*Alleged Denial of Reasonable Access to a Telephone*

Appellant contends: "[T[he repeated denial of reasonable access to the telephone to prepare for trial violated [his] Sixth Amendment right to self-representation and Fourteenth Amendment right to due process." We reject this contention for the same reasons that we rejected appellant's argument that his waiver of counsel was invalid because of the denial of reasonable access to a telephone.

*Alleged Instructional Error*

Appellant argues that the trial court erroneously failed to instruct sua sponte that an intent to return stolen property to the true owner (innocent intent) is a defense to the charge of receiving stolen property. "[T]he mere receipt of stolen goods with knowledge

6

that they have been stolen is not itself a crime if the property was received with intent to restore it to the owner without reward or with any other innocent intent [citation]. The critical factor is the defendant's intent at the time he receives or initially conceals the stolen property from the owner. The intent to restore must exist at the moment the stolen property is accepted by the receiver if he is to be acquitted." (*People v. Wielograf* (1980) 101 Cal.App.3d 488, 494.)

" 'A trial court's duty to instruct, sua sponte, on particular defenses arises " 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " ' [Citation.]" (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) "[A] trial court has no obligation to instruct sua sponte on a defense supported by 'minimal and insubstantial' evidence [citation] . . . ." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1152.)

At trial it did not appear that appellant was relying on the defense of innocent intent. During his brief closing argument, appellant never referred to his mental state. In any event, the trial court did not have a duty to instruct sua sponte on the defense of innocent intent because it was supported by " 'minimal and insubstantial' evidence." (*People v. Barnett*, *supra*, 17 Cal.4th at p. 1152.) Appellant's statements to the police were the sole basis for the defense. Appellant did not tell the police that he had taken the stolen items from Holly Legarde's bag because he intended to return them to the true owners. An officer testified: "He only told me that he knew that Holly was a thief and that Holly steals things. And he knew that they were stolen, so he took them from her." Appellant did not say what he had intended to do with the stolen items when he took them: "He kept saying he was going to talk to another officer, but he was never able to explain why [for two days] he had maintained custody of the stolen property" instead of turning it over to the police. "He mentioned that [during these two days] he was in very close proximity to the police department . . . ."

*People v. Wielograf*, *supra*, 101 Cal.App.3d 488, is instructive. There, the defendant was found guilty of receiving a stolen vehicle. He kept the vehicle in his

garage for five days before notifying the police. On appeal he contended that the trial court had erroneously failed to instruct sua sponte on the defense of innocent intent. The defendant claimed "that both his direct testimony concerning his intent and the circumstantial evidence on this point were to the effect that he intended to return the property to the owner." (*Id*., at pp. 493-494.) The appellate court concluded that the trial court had not erred. "[D]ays went by," and the stolen vehicle remained in the defendant's garage. "He had ample time and opportunity to execute his guiltless 'intents.' " (*Id*., at p. 495.) Appellant likewise "had ample time and opportunity" to turn the stolen items over to the police.

*Alleged Prosecutorial Misconduct*

"A prosecutor commits misconduct when his conduct either infects the trial with such unfairness as to render the subsequent conviction a denial of due process, or involves deceptive or reprehensible methods employed to persuade the trier of fact. [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 711.) "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]" (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

Appellant asserts that, during closing argument, the prosecutor "improperly urged the jury to convict appellant because appellant had been 'fairly' prosecuted." In support of his assertion, appellant cites pages 375, 377, and 380-383 of volume 3 of the reporter's transcript. The cited pages do not support appellant's assertion. They show that the prosecutor argued that appellant had "been treated with fairness," charged "appropriately," and "given a fair trial," not that he should be convicted because of this fairness. We reject appellant's contention that, by making the fairness argument, the prosecutor was "vouching for the truth of the charges." (Bold and capitalization omitted.) In any event, appellant forfeited this claim of misconduct because he failed to object and request an admonition. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1358.)

8

Appellant contends that the prosecutor engaged in misconduct because "the prosecution implied that appellant committed, and could have been charged, with more serious offenses."  "[T]he prosecution explicitly suggested that appellant was likely guilty of identity theft, vehicle burglary, and drug possession."  In support of his contention, appellant cites the following excerpt from the prosecutor's closing argument: "[W]e all must be thinking that this defendant likely engaged in vehicle burglaries and likely was about to or had committed some type of identity theft and probably possessed drugs."  Appellant forfeited this claim of misconduct because he failed to object and request an admonition.  (*People v. McKinzie*, *supra*, 54 Cal.4th at p. 1358.)  Appellant later objected that it was not "correct" for the prosecutor to argue that the stolen property he possessed had come from "vehicle burglar[ies]."  The trial court did not err in overruling this objection because Bartson's and Schumacher's property had been stolen from their vehicles.

Appellant faults the prosecutor for telling the jury during opening statement that appellant possessed "tools for identity theft like credit cards and blank checks."  Appellant objected at this point, and the court overruled the objection.  Appellant failed to preserve this claim of misconduct for appellate review because he merely said, "I object to that, your Honor," without stating the basis for his objection.  "Ordinarily, the failure to object specifically on grounds of misconduct . . . forfeits the claim . . . . [Citation.]"  (*People v. Tully* (2012) 54 Cal.4th 952, 1037-1038; see also *People v. Thomas* (2012) 54 Cal.4th 908, 938-939.)

Appellant argues that the prosecutor committed misconduct by eliciting testimony from a police officer that the syringe found in appellant's shoe contained a "brown substance" that she believed to be heroin.  Appellant objected that the substance had not been "tested to confirm it was heroin."  The trial court did not rule on the objection.  Instead, it admonished the jury that "we need to be clear that [appellant] is not being accused of being in possession of a controlled substance."  Appellant asserts that the prosecutor's misconduct was exacerbated when he referred to the police officer's testimony during closing argument.  The prosecutor said that the officer "believed . . .

9

that there was a small amount, a residue amount of heroin within the syringe." Appellant interjected: "Was the chick [*sic*] tested?" "This is BS." Because appellant neither objected on misconduct grounds nor requested an admonition to disregard the police officer's testimony concerning the contents of the syringe, this claim of misconduct has not been preserved for appellate review. (*People v. Tully*, *supra*, 54 Cal.4th at pp. 1037-1038; *People v. Thomas*, *supra*, 54 Cal.4th at pp. 938-939)

In any event, the alleged misconduct of the prosecutor is not reversible error. " 'Reversal of a judgment of conviction based on prosecutorial misconduct is called for only when, after reviewing the totality of the evidence, we can determine it is reasonably probable that a result more favorable to [the] defendant would have occurred absent the misconduct.' [Citation.]" (*People v. Williams* (2013) 218 Cal.App.4th 1038, 1073; accord, *People v. Tully*, *supra*, 54 Cal.4th at p. 1010.) In view of the overwhelming evidence against appellant, it is not reasonably probable that a result more favorable to him would have occurred absent the alleged misconduct.

*Right to Counsel at Sentencing*

Appellant maintains that he was denied his Sixth Amendment right to counsel at sentencing. Before imposing sentence, the trial court asked if the probation report contained inaccurate information. Appellant replied: "Yes, there is. And I would like to consult an attorney for that." He also wanted to discuss with counsel his "options as far as appeal goes and options as far as a motion for a new trial." Appellant requested that the court appoint counsel to represent him.

The prosecutor responded that he wanted to "make some statements regarding the sentencing" and that he would be on military leave for the next two-and-one-half months. The prosecutor continued: "Even if we can't proceed to sentencing today, I would like to make some statements for the record." Appellant inquired, "Is it possible to just continue this for two months until he gets back?" The court responded, "This is a possibility, but it's not the best practice." The time was approximately 9:00 a.m. The court put the matter over until 4:30 p.m. and "ask[ed] that a member of Conflict Defense Associates consult with [appellant]."

10

At 4:56 p.m. the trial court announced that it had "not been successful in having anyone from the Conflict Defense Associates appear." The date was October 4, 2012, and the prosecutor said that he would not return to work until December 18, 2012. The court asked appellant if he would waive time until December 18. Appellant replied, "Not that long." Over appellant's objection, the court denied his request for appointed counsel.

Appellant falsely accused the judge of calling him a "nigger" in response to his statement that the judge should "get a white robe and a hood."[3] Appellant continued: "So I don't think you should be sentencing me. I object to any further prosecution from you or the DA." The court inquired whether appellant wanted to comment on his claim that the probation report contained an error. Appellant stated, "I haven't had a chance to consult an attorney, so I really can't do myself justice." The court responded, "So [appellant] declines to call any error to the Court's attention with respect to the probation report. Got it." After the court imposed sentence, appellant said to the judge: "You're full-a shit."

Where, as here, a self-represented defendant requests the appointment of counsel after commencement of the trial, the court has discretion whether to grant the request. (*People v. Lawley* (2002) 27 Cal.4th 102, 149.) "[T]he trial court must consider the totality of the circumstances in exercising its discretion. [Citation.]" (***Ibid***.) Relevant factors include "the reasons set forth for the request" and "disruption or delay which reasonably might be expected to ensue from the granting of" the request. (*People v. Gallego* (1990) 52 Cal.3d 115, 164.)

The trial court did not abuse its discretion. Appellant failed to give a valid reason for the appointment of counsel. He said that he wanted to consult with counsel because

---

[3] Appellant engaged in a course of conduct designed to provoke the judge. For example, after the People rested in the bifurcated jury trial on the prior prison term allegations, the judge said to appellant, "[T]his is an opportunity for you to present any evidence." Appellant responded by making an obscene gesture with his middle finger. He said: "You didn't tell me I could present any evidence, so don't sit here and give 'em that bullshit, man." Appellant acknowledges that he "irritated the judge throughout the trial."

the probation report contained inaccurate information. But he would not identify the inaccuracy. For all the court knew, the alleged inaccuracy was immaterial or even nonexistent. Appellant also said that he wanted to discuss with counsel his "options as far as appeal goes and options as far as a motion for a new trial." His appellate options had nothing to do with sentencing. The trial court correctly informed him that a notice of appeal must be filed within 60 days after sentencing. (Cal. Rules of Court, rule 8.308(a).) On the other hand, the sentencing of appellant precluded him from moving for a new trial because "[t]he application for a new trial must be made and determined before judgment . . . ." (§ 1182.) But it was speculative whether appellant had grounds for a new trial. He did not mention any grounds, let alone the statutory grounds listed in section 1181.

Furthermore, the appointment of counsel would have disrupted the proceedings because appellant refused to continue the matter until the prosecutor returned from military leave. The prosecutor would not have been present to refute appointed counsel's arguments. The District Attorney could have assigned another deputy to appear in place of the prosecutor, but the deputy would have lacked the knowledge of the case that the prosecutor had acquired during the trial.

We also take into consideration appellant's vacillation concerning a continuance. In the morning appellant was willing to continue sentencing until the prosecutor's return. Appellant asked the court, "Is it possible to just continue this for two months until he gets back?" But in the afternoon appellant would not consent to a continuance of this duration. In view of appellant's vacillation and refusal to identify the allegedly inaccurate information in the probation report, the court could have reasonably concluded that he was attempting "to manipulate the court system." (*People v. Trujillo* (1984) 154 Cal.App.3d 1077, 1087.) In such circumstances, a court does not abuse its discretion if it denies a self-represented defendant's request for appointed counsel. (***Ibid***.)

*Fee for Appointed Counsel*

Pursuant to section 987.5, subdivision (a), appellant was assessed a registration fee of $25. This fee applies only when the defendant was "represented by appointed counsel." (***Ibid***.) The People concede that the fee must be stricken from the judgment.

12

*Disposition*

The judgment is modified to strike the $25 registration fee imposed pursuant to section 987.5, subdivision (a).  In all other respects, the judgment is affirmed. The superior court clerk shall prepare an amended abstract of judgment showing the modification and shall transmit a certified copy to the Department of Corrections and Rehabilitation.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, J.


We concur:



GILBERT, P.J.



PERREN, J.

13

Kent M. Kellegrew, Judge

Superior Court County of Ventura

_____

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.