# STATE v. WALTER SIMONSON.

214 N. W. 2d 679.

January 25, 1974—No. 44046.

*Clifford F. Hansen,* for appellant.

*Warren Spannaus,* Attorney General, *Gary W. Flakne,* County Attorney, and *Theodore R. Rix, Vernon E. Bergstrom,* and *Michael McGlennen,* Assistant County Attorneys, for respondent.

PER CURIAM.

Defendant, found guilty by a district court jury of receiving or concealing stolen property, Minn. St. 1971, § 609.53, appeals from judgment of conviction and from an order denying a motion for a new trial. After careful consideration of the several issues raised by defendant, the main one being whether the evidence was sufficient to support the verdict, we affirm.

The stolen property, which was taken in a burglary from a Bloomington company, consisted of a toolbox filled with tools valued by the owner at $800 and 3,000 pounds of lead ingots valued at 22 cents per pound. Defendant purchased the property from the burglars, one of whom worked for him, on the day after the burglary. Defendant, who is a scrap metal dealer, paid $60 for the tools and 6 cents per pound for the lead. Approximately a month later defendant, who by then had sold the lead, made the first in a number of telephone calls to Peter Libby, the general manager of the company from which the property had been

stolen. The gist of what defendant said in this conversation was that he had obtained possession of the tools without knowledge that they were stolen and had later learned that the tools were stolen property for the return of which a reward was being offered. Although no reward had been offered, Libby indicated that perhaps some reward could be given. After two more telephone calls to Libby in which defendant stated simply that he would get in touch soon, defendant again called and this time was introduced by Libby to the actual owner of the tools, Duane Vaughn. As Vaughn related it, defendant stated that Vaughn could get his tools back if he were willing to pay for them. After some discussion, Vaughn told defendant that he would be willing to pay $125 and defendant accepted his offer, agreeing to meet Vaughn later that day. At that meeting, about which Vaughn had informed the Bloomington police in advance, defendant refused to accept Vaughn's check and indeed insisted on cash "on the table" before he would even show Vaughn the tools. Vaughn then left, ostensibly to go to the bank but in fact to inform the police, waiting nearby, of what had happened. The police, without a warrant, went to defendant's house where they arrested him and, with his consent, seized the tools.

We hold that this evidence was sufficient to support the verdict. In order to convict defendant, the state had to prove that defendant either received or concealed the stolen property knowing that the property was stolen property and intending to deprive the owner of his property. State v. Carter, 293 Minn. 102, 196 N. W. 2d 607 (1972); LaFave & Scott, Criminal Law, § 93. Although there was no direct evidence that when defendant received the property he had the requisite knowledge and wrongful intent, the jury could properly infer this from the evidence that defendant bought the property shortly after it was stolen for a price far below its actual value.

The evidence justified a further finding of criminal concealment of stolen property. "Concealing," as that word is used in the statute, is not limited to its literal meaning of hiding or secreting but

includes conduct which converts the property to the use of the defendant or renders more difficult its discovery by the owner. State v. Carter, *supra*. Once defendant learned that the property was stolen, he became obligated to immediately and unconditionally return the property to the owner or at least make it available to him to pick up. By acting as he did, defendant made it more difficult for the owner both to locate the property and to secure its return. And with reference to the matter of intent, we believe that the rule should be that one who receives or conceals what he knows to be stolen property with the intent to restore it to the owner only if the owner pays a reward does have the requisite wrongful intent. See, LaFave & Scott, Criminal Law, § 93, p. 688.

Defendant's arguments in support of suppressing a statement he gave to the police and all the evidence resulting therefrom do not warrant extended discussion. The arrest was not rendered illegal by the fact that it was made without a warrant. State v. Stark, 288 Minn. 286, 179 N. W. 2d 597 (1970), certiorari denied, 402 U. S. 930, 91 S. Ct. 1529, 28 L. ed. 2d 864 (1971). Defendant's contention that the Bloomington police had no authority to arrest him in Minneapolis was not asserted at the Rasmussen hearing as a basis for suppression of the evidence seized incident to the arrest. And defendant's argument about police failure to take him before a magistrate with all practicable speed after the arrest ignores the fact that the police, after questioning defendant at the station, decided to release him and wait until they had talked with the men defendant had named as the burglars before deciding whether to bring any charges.

We see little merit in defendant's contention that the state should have charged him in four separate counts—receiving lead, concealing lead, receiving tools, concealing tools—rather than in one count. See, State v. Ostensoe, 181 Minn. 106, 231 N. W. 804 (1930), and 42 C. J. S., Indictment and Information, § 168 (b). In any event, defendant has not shown that he was prejudiced as required by Minn. St. 628.19.

Defendant's final contention, that the trial court in denying

the motion for a new trial erred in refusing to consider the affidavit of a polygraph operator concerning the results of a posttrial polygraph examination of defendant, is without merit. See, State v. Perry, 274 Minn. 1, 142 N. W. 2d 573 (1966); State v. Anderson, 261 Minn. 431, 113 N. W. 2d 4 (1962); State v. Kolander, 236 Minn. 209, 52 N. W. 2d 458 (1952).

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.

MR. JUSTICE SCOTT took no part in the consideration or decision of this case.