[Crim. No. 19029. First Dist., Div. Two. Jan. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS WALTER WIELOGRAF, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Thomas N. Griffin, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LINDSAY, J.*—Defendant appeals from an order granting probation after jury verdict finding him guilty of receiving stolen property in violation of Penal Code, section 496, subdivision 1. He contends that the trial judge prejudicially erred when he failed to instruct the jury *sua sponte* that the intent to return the property to its true owner is a defense to said charge and, alternatively, that he was denied the effective assistance of counsel in that trial counsel failed to offer an instruction on innocent intent. We conclude that the contentions are without merit and we affirm the order.

### Summary of the Evidence

Sometime Sunday night, May 28, 1978, an antique, fully restored, "Arabian Sand" 1929 Model A Ford with orange wheels and black fenders, worth $8,000 was stolen from the parking lot of the Marriott Inn, in Santa Clara County, where its owner, Lee Hoskins, had parked and locked it. Taken with the car were valuable automobile spare parts, tools, and documents showing the owner's name and address.

Later that night Calvin Orr and Gary Tate arrived with the Model A at defendant's residence in the City of Santa Clara. They had been friends with defendant for about 12 years; both were drunk. Defendant said he knew that they could not have come by the car legally, though neither at first said it was stolen. Instead they told defendant they had nowhere to put the car and did not know what to do with it. Defendant

---

*Assigned by the Chairperson of the Judicial Council.

suggested they put it in his garage. The three friends then did so. Defendant testified that he did this to protect the car and to keep his friends out of trouble. Once inside the residence, Orr and Tate told defendant they had stolen the car. He then agreed to store the vehicle for them "indefinitely."

During the next five days, defendant had several meetings with Orr and Tate, discussing what to do with the car. On June 1, the "San Jose Mercury News" published an offer by the owner of a reward of $1,000 for the return of his car and conviction of the person(s) responsible for the theft. Defendant showed the printed reward offer to Orr and Tate, and the next evening the three were joined by a fourth friend, Frank Sylvia, Jr., at the residence of the defendant where they spent the night debating what they should do. They discussed various ideas: keeping the car, finding a buyer, disassembling it and selling the parts, "many things." In the course of this discussion defendant suggested they turn the car in, collect the reward, and divide it equally among the four of them. Defendant did not want to be the person to telephone the police and report the location of the stolen car. Sylvia testified that the defendant told him to telephone the police and that if he refused, "I have a buyer for it and I'll cut you out of the deal." At 5 a.m. defendant, Orr and Tate pushed the car out onto the street to a point a block or two from defendant's garage. They wiped all fingerprints from the car. Sylvia telephoned the police, reported the location of the missing antique vehicle and claimed the reward. Santa Clara police recovered the stolen Model A Ford.

On June 9, Santa Clara Police Detectives Seymour and MacArthur went to interview defendant at his residence. Defendant came to the door but asked the officers to return. The officers waited outside until invited into his home 20 or 25 minutes later. The detectives *again* told defendant they "were investigating the Model A that had been stolen from [the] Marriott Hotel and we wanted to talk to him about that." After a short conversation, defendant granted permission to look in his garage. As a result of Detective Seymour's observations, he suspected that the stolen car had been in that garage. He so told defendant, advised him of his Miranda rights, which defendant waived, and proceeded to interview the defendant. Defendant admitted that the Model A Ford had been stored in his garage from the date it was stolen, that he knew it was stolen, that he had removed a box of spare parts from the car immediately prior to pushing it out onto the street. When questioned about the spare parts, defendant went to another

room and immediately returned with a box containing spare parts and tools which he gave to the officers.

Defendant testified in his behalf. He essentially confirmed the above facts; maintained he told his friends he had a buyer for the car so they would get it out of his garage; stressed that he wanted to return the car to Mr. Hoskins but admitted he did not attempt to contact him because "I would get myself and my friends in trouble..."; acknowledged that the spare parts removed from the car were scarce, and that there was a "Vintage Ford" parts shop about 150 yards from where he lived. Defendant further testified that Orr and Tate discussed with him and Sylvia dumping the automobile parts into the bay so that the police could not obtain fingerprints, but that he disapproved because they were hard to obtain and valuable. Sylvia testified under cross-examination by defendant's counsel that there was no conversation regarding dumping the spare parts into the bay. When asked under direct examination "What did you plan to do with the parts?" defendant answered, "I didn't really know right at the time."

## Innocent Intent as Defense to Charge of Attempted Receiving Stolen Property

In urging reversal of his conviction, defendant places almost complete reliance upon *People* v. *Osborne* (1978) 77 Cal.App.3d 472 [143 Cal.Rptr. 582]. In *Osborne,* an undercover police officer sold certain items of jewelry to defendant Osborne for $520 cash at Osborne's coin and stamp store. The officer told him before the sale that the jewelry had been stolen by him when, in fact, the jewelry had never been stolen. Osborne testified that he believed the property was stolen and that the officer was really the thief. He claimed twice in his testimony that he purchased the jewelry from the officer because he (Osborne) was going to try to arrest the suspected thief for selling stolen merchandise. However, as soon as the officer counted the money paid him by Osborne, he was arrested.

In analyzing the innocent intent issue, the appellate court discussed the 1951 legislative changes to statutes making the receiving, concealing or withholding of stolen property a crime; reviewed the three elements necessary to establish guilt of the offense (see *People* v. *Martin* (1973) 9 Cal.3d 687 [108 Cal.Rptr. 809, 511 P.2d 1161]); concluded that though the present Penal Code section 496 did not re-

quire the prosecution to prove a specific fraudulent intent by a perpetrator as an element of the offense, the absence of a guilty intent, if proved, disproved the charge; considered the duty of a trial court to instruct, *sua sponte*, on defenses not inconsistent with the defendant's theory of the case (see *People v. Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913]; *People v. Pijal* (1973) 33 Cal.App.3d 682 [109 Cal.Rptr. 230]); and held that there was substantial evidence supportive of a defense of innocent intent, and that the trial court's failure to instruct, *sua sponte* on the defense of innocent intent (to return the property to its owner) constituted reversible error.

The *Osborne* case involved an *attempt* to receive stolen property, which requires specific intent to commit the substantive offense (*People v. Rojas* (1961) 55 Cal.2d 252, 257 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252]; *People v. Meyers* (1963) 213 Cal.App.2d 518, 523 [28 Cal.Rptr. 753]). In *Osborne*, the trial court had instructed the jury on specific intent as an element of the offense of attempted receiving stolen property, but on appeal the court discussed the defendant's asserted innocent intent as a defense to the substantive crime of receiving stolen property rather than as a defense to the crime of attempted receiving of stolen property.

### Innocent Intent Instruction—In This Case

■ There may be trials where the defendant is charged with receiving, or concealing, or withholding stolen property in which the giving of an "innocent intent" instruction as outlined in *Osborne* is appropriate either in response to a request from defendant's counsel or *sua sponte*. This is not one of them.

The trial court instructed the jury on the elements of the offense,[1] the definition of the word "knowingly" (CALJIC No. 1.21), general criminal intent (CALJIC No. 3.30) and reasonable doubt (CALJIC No. 2.90). On appeal defendant freely concedes that his own testimony admitted each element of the offense, but contends that both his direct testimony concerning his intent and the circumstantial evidence on this

---

[1] "To constitute a violation of California Penal Code Section 496, there are three essential elements:

"1) The property must have been obtained by theft;

"2) The defendant must have bought or received such property, or the defendant must have concealed or withheld such property from the owner;

"3) The defendant must have known at the time he committed one of the acts specified above that the property had been obtained by theft."

point were to the effect that he intended to return the property to the owner. Relying on *People v. Osborne, supra,* 77 Cal.App.3d 472, defendant argues that the trial court erred in failing to instruct, *sua sponte,* that the intent to return the property to its true owner is a defense to a charge of receiving stolen property.

As the court stated in *Osborne,* under Penal Code section 496 specific fraudulent intent is not an element of the crime which the prosecution must prove. Under our statute the defendant is obliged to prove that his intent was innocent. Although no other reported California case has been cited or found by independent research wherein the courts of this state have discussed the requisite criminal intent or mens rea necessary to sustain a conviction for receiving or concealing stolen property, it has been considered a "general intent"[2] rather than a "specific intent" crime.[3] Thus, despite the language of the statute (Pen. Code, § 496, subd. 1), the mere receipt of stolen goods with knowledge that they have been stolen is not itself a crime if the property was received with intent to restore it to the owner without reward or with any other innocent intent (76 C.J.S., § 9, pp. 14-16). The critical factor is the defendant's intent at the time he receives or initially conceals the stolen property from the owner. The intent to restore must exist at the moment the stolen property is accepted by the receiver if he is to be acquitted. If the defendant received or concealed stolen property with general criminal intent to aid the thief, or to deprive the owner of possession, or renders more difficult a discovery by the owner, or to collect a reward, he possesses the requisite wrongful intent, and it is no defense that he *subsequently* intended to return the stolen property to the owner (*People v. Steinberg* (1942) 51 Cal.App.2d 221, 227 [124 P.2d 341]; *State v. Simonson* (1974) 298 Minn. 235 [214 N.W.2d 679]; 1 Witkin, Cal. Crimes, Defenses, § 250, p. 233; 76 C.J.S., § 9, pp. 14-16).

---

[2]Penal Code, section 20, provides: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." (See, generally, 1 Witkin, Cal. Crimes, Elements of Crime, §§ 52-64, pp. 56-69.)

[3]A significant difference between general intent and specific intent crimes was given in *People v. Hood* (1969) 1 Cal.3d 444, 456 [82 Cal.Rptr. 618, 462 P.2d 370], as follows: "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent. There is no real difference, however, only a linguistic one, between an *intent* to do an act already performed and an intent to do that same act in the future."

It is important to contrast the factual situation and the time element in the instant case and in *Osborne*. In the latter case the defendant was arrested without delay upon his receiving the property and the counting of the money by the officer. In the absence of the passage of time no further conduct nor utterance on the part of the "receiver" was available to directly or circumstantially assist in determining his actual intent. His testimony supplied this element. Osborne testified that he bought the "stolen" property only to effect the arrest of the thief. He had no opportunity to carry out his stated purpose as he himself was arrested immediately. In our case, in addition to the testimony of the defendant, days went by and events provided activity and speech which could be appropriately and properly evaluated by the jury under the instructions actually given by the court. The case against the defendant was overwhelming and the facts are wholly inconsistent with defendant's protestations at trial of worthy motives and righteous intents. He had ample time and opportunity to execute his guiltless "intents." By defendant's own testimony he in effect had no defense.

We do not understand *Osborne* to hold, nor the law to be, that an instruction on innocent intent is necessary whenever a defendant disclaims guilty intent. Otherwise, it would be mandatory almost without exception whenever a defendant denied the charges. In the few instances where such an instruction is warranted, it must of necessity turn on the particular factual situation before the trial court. The evidence in this case did not impose on the trial court the duty to instruct the jury, *sua sponte*, that the defendant's intent to return the stolen car to its owner is a defense to the charge of receiving stolen property.

### Competence of Counsel

Defendant argues that he was denied his constitutional right to effective assistance of counsel in that trial counsel failed to offer an instruction on innocent intent (see, generally, *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859]). Defendant argues that his trial counsel should have been aware of the decision in *People* v. *Osborne, supra,* 77 Cal.App.3d 472 (decided in Feb. 1978), and that the failure to place the issue of defendant's innocent intent before the jury "cannot be tolerated." Incidentally, there is nothing in the record to indicate that defendant's attorney was not aware of the *Osborne* decision. The *Osborne* court itself remarked: "Our research failed to find any California cases on the defense of innocent intent as we have applied it to the offense charged." (*Id.*, p. 480.)

As previously discussed, however, there was no substantial evidence of "innocent intent" in this case. Although trial counsel may have argued the question of general criminal intent more effectively, he was not at liberty to alter or misrepresent the facts which showed a lack of innocent intent. Counsel did the best he could in the face of overwhelming evidence of guilt. Accordingly, the failure to request such an instruction did not result in a denial of effective representation. Had it been requested, the trial court would have been justified in refusing to so instruct the jury. The instructions given covered all essential elements.

### *Error in "Beyond Reasonable Doubt" Instruction*

■    We now consider a matter not discussed in the appellate briefs. Together with the standard instruction defining proof "beyond a reasonable doubt" (Pen. Code, §§ 1096, 1096a; former CALJIC No. 2.90 (3d ed. 1970); see new CALJIC No. 2.90 (4th ed. 1979)), the trial court gave former CALJIC No. 22 (rev.).[4] This was error; made so by the retroactivity provision in a Supreme Court decision rendered 12 months after the jury verdict in the instant case (*People* v. *Brigham* (1979) 25 Cal.3d 283 (fn. 15, p. 292) [157 Cal.Rptr. 905, 599 P.2d 100]). The ruling in *Brigham* was summarized on page 292, as follows: "Since former Code of Civil Procedure section 1826 has been repealed, and former CALJIC No. 22 (rev.) has been removed from the CALJIC list of jury instructions, this instruction should no longer be given. It is the last vestigial remains of an inartfully drawn statute which has never been given a consistent interpretation by this court. Under the inherent supervisory powers of this court over the procedures of trial courts, the giving of any instruction based on former CALJIC No. 22 (rev.) is disapproved." (Fns. omitted.)

However, a close review of the entire record in this case, including the evidence, makes it abundantly clear that the instruction error was harmless and provides no basis for reversal. We hold that it is not "reasonably probable that a result more favorable to the appealing party

---

[4]"The law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Moral certainty only is required, which is that degree of proof which produces conviction in an unprejudiced mind."

would have been reached in the absence of error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; Cal. Const., art. VI, § 13.)

The order granting probation is affirmed.

Taylor, P. J., and Rouse, J., concurred.