*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CM-606

JESSICA A. LIHLAKHA, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia,
(CMD-16417-11)

(Hon. Truman A. Morrison III, Trial Judge)

(Argued November 7, 2013                    Decided April 24, 2014)

*R. Michael Labelle* for appellant.

*Clare Pozos*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Elizabeth H. Danello*, *John L. Hill*, and *Ann K. H. Simon*, Assistant United States Attorneys were on the brief, for appellee.

Before GLICKMAN and EASTERLY, *Associate Judges*, and FERREN, *Senior Judge*.

Opinion for the court by *Senior Judge* FERREN.

Concurring opinion by *Associate Judge* EASTERLY at page 25.

FERREN, *Senior Judge*:  Following a bench trial, appellant Jessica Lihlakha was convicted of misdemeanor receiving stolen property (RSP)[1] and unlawful entry.[2]  On appeal, Lihlakha challenges the sufficiency of the evidence to support her convictions.  We affirm her conviction for unlawful entry but remand the record for further findings on the RSP charge.[3]

**I.**

Lauren Banks testified that on August 13, 2011, she returned to her dorm room at Howard University and, upon entering, left her book bag in the hallway. During the minute or so that she left the bag unattended, her laptop inside it, a Macbook Pro, disappeared.  After reporting what happened to campus police, Banks placed signs around her dorm building announcing a "missing Mac laptop," providing her phone number, and stating that the "[f]inder will be graciously compensated."  The next evening, Banks received a phone call from a woman who

---

[1]  D.C. Code § 22-3232 (a) & (c)(2) (2001 & Supp. 2011).  The RSP statute has since been amended, see *infra* note 4.

[2]  D.C. Code § 22-3302 (2001 & Supp. 2009).

[3]  Counsel for both parties spell appellant's last name in the briefs as "Lihlakha."  During her testimony at trial, however, appellant spelled her name "Lihalakha," according to the stenographer.  Absent any motion to correct the spelling, we have relied on the appellate briefs.

asked Banks whether she was missing an HP laptop and what the reward would be for returning it.  Banks answered that hers was not an HP but added that the reward was $1,000.  The caller then told Banks that she had "just gotten this HP for the low," and that she would "keep an ear out and see if . . . your laptop comes up."

The woman called Banks the next day to say that she had found two Macbook Pros with the name "Lauren" on them after going to see "the guy she said she got the HP from."  She told Banks that she had found two Mac laptops "at the same place" in "the room where the other computers were."  The woman asked Banks for her full name to determine which of the Mac laptops belonged to her.  Banks complied and learned that the caller apparently had her laptop.  The caller then contacted Banks again to set up a meeting to exchange the money for the laptop that evening.  At that point, Banks contacted the Howard University police, who suggested that Banks either meet the caller herself or have a police officer go in Banks's place.  Banks agreed to have an officer pose as Banks to meet the caller.  Per police instructions, Banks told the caller that she needed another day for her parents to wire her the reward money, and she continued to communicate with the caller until they arranged a time and place to meet.  At the meeting on August 17, 2011, a police officer posing as Banks met the caller, and the officer thereupon recovered the laptop and brought Lihlakha to the police department for

questioning. The police showed Banks a photo of the person who, an officer said, had delivered Banks's computer. (From the photo, Banks eventually identified that person in court as Lihlakha.) Not long thereafter, Banks heard knocking on her dorm room door. After looking through the peephole, she recognized Lihlakha (from the photo) as the person standing outside her door with a man who was trying to put a key into it that did not fit. The two then left, and Banks reported the incident to campus police.

The next witness for the government was Investigator Elizabeth Neville, the police officer who met the caller while posing as Banks. Officer Neville testified that Lihlakha had approached her at the place where Banks and the caller had arranged to meet. Neville asked Lihlakha if she had the laptop and told Lihlakha to sit down next to her. Neville testified that she saw a laptop inside Lihlakha's bag and asked about it, whereupon Lihlakha pulled the laptop out of her bag, opened it, turned it on, and passed it to Neville. Immediately thereafter, other police officers arrived and took Lihlakha away.

The government also presented the testimony of Investigator Ronald Tarpley of the Howard University Police, who testified that he had questioned Lihlakha about how she obtained Banks's laptop. According to Tarpley, Lihlakha replied

that a local drug dealer named "Kool-Aid" had told her "he had a stolen laptop" for which a reward had been offered, and that if "she returned [the laptop] she [could] keep 700 and give him 300 of the $1,000 reward."

Finally for the government, Investigator William Brown of the Howard University Police testified that he had told Lihlakha on August 18, 2011, that she was prohibited from coming "on Howard University property." He added that he gave her a copy of the barring notice at that time, that he explained it to her, and that she refused to sign it.

For the defense, Lihlakha testified that a man named Tony, whom she knew as "Kool-Aid," had shown her a "sign" indicating that a reward was offered for the return of a missing computer. Lihlakha called the phone number on the sign, and the woman who answered told her that she had "left [the computer] out" but did not indicate that it had been stolen. Lihlakha eventually obtained a computer from Tony that she believed belonged to the person with whom she had spoken over the phone. Lihlakha testified that she had wanted to return the computer to the rightful owner the same day, even if the owner did not yet have the reward money, but that the owner had asked Lihlakha to wait until the owner obtained the money from her parents. After arranging a time to meet with the owner, Lihlakha attempted to

return the computer but instead met an undercover police officer who was posing as the owner, and "[t]hat's when the police came out." Lihlakha acknowledged that after her arrest, a dean ordered her not to go inside the East or West Towers at Howard University, where Banks resided. Lihlakha further testified that she had never visited Banks's dorm room inside the West Tower.

On cross-examination, Lihlakha testified that she had asked Tony, whom she was "dating loosely," for "some money." He had given her a "flyer" offering a reward for the return of a missing laptop. He then told her that a "computer he received was what he thought was on the flyer" and asked Lihlakha to call the number on the flyer and "find out about it." Lihlakha further testified that Tony did not tell her the laptop was stolen; he said that he had received it from a Howard University student in "exchange for something." Lihlakha added that she had asked no questions and had no further information. She also testified that Tony did not ask her to give him any portion of the reward money, that she did not call the police once she obtained the computer, and that she did not tell Tony to call the police.

The trial court discredited Lihlakha's testimony, finding that it was inconsistent and appeared to be "fashioned on the fly." The judge then credited the

testimony of Banks and Investigator Tarpley, finding Lihlakha guilty of RSP beyond a reasonable doubt. The judge discredited the portion of Investigator Brown's testimony that Lihlakha had been barred from coming onto any of Howard University's property. However, the judge found Lihlakha guilty of unlawful entry nonetheless based on "the terms of the barring notice" given to Lihlakha and, inferentially, on Lihlakha's own testimony that a dean at Howard had made it clear to her "not to go to the [dormitory] towers at all."

**II.**

At the time of trial, D.C. Code § 22-3232 (a) (2001) provided:

> A person commits the offense of receiving [1] stolen property if that person [2] buys, receives, possesses, or obtains control of stolen property, [3] knowing or having reason to believe that the property was stolen, [4] with the intent to deprive another of the right to the property or a benefit of the property.[4]

---

[4] *See also In re R.K.S.*, 905 A.2d 201, 219 (D.C. 2006); *Moore v. United States*, 757 A.2d 78, 82 (D.C. 2000). Both *R.K.S.* and *Moore* recognize another element – "the property had a value of $250 or more" – which has been supplanted by amendment to the statute changing the language for a misdemeanor to: "the stolen property has some value." D.C. Code § 22-3232 (c)(2).

Furthermore, the "intent to deprive" element has since been deleted from the statute with the passage of D.C. Law 19-120. *See* D.C. Code § 22-3232 (a) (2012 Repl.). The amended statute did not become effective until April 20, 2012 (a week after judgment was entered in this case), whereas Lihlakha's tender of the stolen laptop to Investigator Neville (in lieu of Banks) occurred on August 17, 2011, four

(continued . . .)

The first two elements – that the property was stolen by someone and that Lihlakha received, possessed, or obtained control of the property in question – are uncontested. Moreover, Lihlakha admitted to Investigator Tarpley (contrary to her testimony at trial) that her supplier, Tony, *i.e.*, "Kool-Aid," "had a stolen laptop" which he would allow her to parlay into a $1,000 reward, reduced by $300 for Kool-Aid (at trial she denied any such rebate). Lihlakha has not contested receipt of this hearsay admission in evidence. Accordingly, the evidence is sufficient to satisfy the third element of RSP: knowledge or reason to believe that the property was stolen.[5]

---

(. . . continued)
days after Lihlakha first contacted Banks. Therefore, the prior version of the statute, which included the intent to deprive element, applies here. *See Jones v. United States*, 719 A.2d 92, 94 (D.C. 1998) ("[F]aithful to our best knowledge of the original understanding of the Ex Post Facto Clause[,] [l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990))).

[5] It is not clear whether Lihlakha's admission to Investigator Tarpley that Tony "had a stolen laptop" was referring to the HP laptop or to Banks's laptop, which she told Banks she had obtained from a "guy" (whom Lihlakha later identified during her testimony as Tony) at the "same place" where she obtained the HP in a "room where the other computers were." Either way, the computers all came from the same source, and Lihlakha does not contest on appeal that she knew the computer at issue was stolen.

We are therefore left to determine whether the evidence is sufficient for a fourth-element finding that, at the time appellant acted in receiving the stolen property, she intended to deprive Banks of the right to her computer or a related benefit. Lihlakha does not renew on appeal the principal defense she presented at trial: the third-element defense that she did not know the laptop had been stolen. Rather, she now presents two arguments claiming innocent intent premised on the irrelevance of whether she knew that the laptop "was stolen or not."

First, she contends that she and Banks had voluntarily entered into a valid unilateral "contract" pursuant to which Lihlakha would receive an advertised reward in exchange for returning Banks's computer. In this connection, citing case law[6] and the Model Penal Code,[7] Lihlakha argues that she lacked the criminal mind essential to RSP because her only intent had been to seek possession for the purpose of returning the computer to its rightful owner, even though she did so in the expectation of obtaining the offered reward. Alternatively, Lihlakha asserts a "consent" defense, not dependent on contract theory, arguing that Banks had authorized Lihlakha to seek possession of Banks's computer by offering a reward

---

[6] *Godwin v. United States*, 687 F.2d 585 (2d Cir. 1982).

[7] Model Penal Code § 223.6 (1).

for its return, fully contemplating that Lihlakha "would possess property that [Banks] had reported as stolen."

## III.

## A.

Initially, we must resolve whether counsel at trial adequately preserved the arguments that Lihlakha now presents on appeal. After a bench trial, in the absence of a motion for judgment of acquittal at the end of trial, the defendant's not guilty plea is enough in itself to preserve for appeal all challenges to sufficiency of the evidence, whether specified at trial or not.[8] There was no such acquittal motion here. Sufficiency of the evidence, of course, means sufficient for conviction of the charge, including sufficiency of a legally available defense. Before we embark on a sufficiency analysis, therefore, we must evaluate the legal validity of the two defenses, proffered on appeal, which Lihlakha contends the trial court erroneously failed to recognize: return-for-reward (unilateral contract) and consent.

---

[8] *See Newby v. United States*, 797 A.2d 1233, 1238 & n.2 (D.C. 2002).

Of these two defenses, it is clear that Lihlakha did not claim "consent" at trial. Our review of consent, therefore, is limited to plain error,[9] and we are satisfied that the trial court did not plainly err in this respect. This jurisdiction has never recognized a consent defense in this context; indeed, to get there, counsel would have us convert for use in reward cases a standard instruction on alleged consent to sexual acts, otherwise criminal – an analogy we find wholly inapposite. Furthermore, any consent by Banks to Lihlakha's actions would not have been fully informed, given Lihlakha's failure to disclose her relationship with Tony (which might well have discouraged mutual dealing). Finally, any meaningful argument invoking consent is inherent in the elements of Lihlakha's return-for-reward (unilateral contract) defense, to which we now turn.

Without elaboration, counsel did suggest the return-for-reward defense at trial. In closing argument, while contending primarily that Lihlakha did not have reason to believe the computer was stolen, counsel also relied on what the government has called "the law of reward" to nullify Lihlakha's "intent to deprive" Banks of her property or its benefit. Said counsel:

---

[9] *See Arthur v. United States*, 986 A.2d 398, 404 (D.C. 2009) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).

> I think that it is a situation where a young lady was trying to do what she thought was the right thing to try and return this computer[,] and also there was a motive out of it where she could try and get a few dollars as a result of her efforts.

Trial counsel therefore articulated, albeit quite generally, the legal theory on which the RSP conviction here will ultimately turn – as formalized by counsel in Lihlakha's brief on appeal.

**B.**

Appellate counsel relies on cases from this jurisdiction recognizing that "rewards are governed by the law of [unilateral] contracts,"[10] meaning, in this context, that any agreement for a reward between the owner of stolen property and someone who has come to possess it would be non-binding until the possessor has satisfied all the conditions for the reward announced by the owner.[11]  Counsel maintains that such a contract was satisfied here, free of criminal taint, upon Lihlakha's attempted delivery of Banks's laptop.  And that contract was valid, says counsel, because "possession of [stolen] property with the consistent intent of

---

[10]  *Glover v. District of Columbia*, 77 A.2d 788, 790 (D.C. 1951); *see Glover v. Jewish War Veterans of United States*, 68 A.2d 233, 234 (D.C. 1949).

[11]  *See* SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 1:17 (4th ed. 2007).

obtaining it to return it to the owner for a freely advertised reward" will negate "the mental intent element of the crime of receiving stolen property."

Lihlakha stresses, therefore, that she did not intend to deprive Banks of her laptop, even though she knew it was stolen, because she merely obtained the laptop "with the intent to return it in exchange for the reward." This court has never considered the relevance, if any, of returning stolen property for a reward when defending a charge of RSP. Other courts have done so, however, beginning with a premise derived from the common law, as codified in the Model Penal Code: "[T]he offense is established by knowing possession of stolen property 'unless the property is received, retained, or disposed with purpose to restore it to the owner.'"[12] The "unless" clause is where interpretation begins. Most courts stress that to avoid conviction of RSP, one must return the property to its rightful owner

---

[12] *Godwin v. United States*, 687 F.2d 585, 588 (2d Cir. 1982) (quoting Model Penal Code § 223.6 (1)); *see State v. Barker*, 346 S.E.2d 344, 349 (W. Va. 1986) (mere receipt of stolen goods knowing them to have been stolen is not itself a crime, "as where the property is received with the intent of restoring it to the owner without reward").

"immediately,"[13] or in lieu of the owner to "law enforcement officials,"[14] and in any event must do so "unconditionally."[15]

The courts appear uniformly to uphold RSP convictions if the possessor of property known to be stolen expressly conditions return of the property on receipt of compensation.[16] Courts, however, have come to distinguish between demanding payment for the return of stolen property and returning stolen property in response

---

[13] *United States v. Calkins*, 906 F.2d 1240, 1247 (8th Cir. 1990); *State v. Simonson*, 214 N.W.2d 679, 681 (Minn. 1974); *State v. Lusher*, 708 S.W.2d 188, 189-90 (Mo. Ct. App. 1986).

[14] *Calkins*, 906 F.2d at 1247.

[15] *Id.*; *Simonson*, 214 N.W.2d at 681; *see Baker v. State*, 25 S.W. 603, 605 (Ark. 1894).

[16] *See, e.g.*, *United States v. Mardirosian*, 602 F.3d 1, 7-8 ("We tread no new ground in declaring that the act of demanding a fee for the return of stolen property is unlawful."); *Calkins*, 906 F.2d at 1247 (affirming jury instructions stating that "[a] person who knowingly possesses stolen goods has no right to demand compensation or a reward from the owner as a condition to returning the goods, and he may not withhold or conceal the goods until a reward is made available"); *People v. Wielograf*, 161 Cal. Rptr. 680, 684-85 (Cal. Ct. App. 1980) (evidence sufficient for conviction of RSP when defendant permitted storage of stolen vehicle in his garage for several days and suggested to thieves that vehicle be turned in for reward); *People v. O'Reilly*, 138 N.Y.S. 776, 783 (N.Y. App. Div. 1912) (defendant guilty of RSP after he held onto stolen property and returned it only when reward had been paid); *People v. Dadon*, 640 N.Y.S.2d 425, 427 (N.Y. Crim. Ct. 1996) (motion to dismiss information denied where "accusatory instrument here alleges that defendants sought a reward as a condition of returning the property").

to an offer of a reward.[17]  These courts, reflecting the common law, eliminate the return-for-reward mentality from criminal intent if the evidence shows that "the reward has been announced or is believed to have been announced before the property is possessed or agreed to be possessed;"[18] "that the person claiming the reward had nothing to do with the theft";[19] and, as we have noted, that the person

---

[17]  *See Calkins*, 906 F.2d at 1247 ("There is a distinction between hoping for or expecting a reward upon restoration of stolen property . . . and unlawfully withholding or failing to restore stolen property until a reward is paid or made available."); *Lusher*, 708 S.W.2d at 189-90 (evidence insufficient for RSP when owner of stolen fence posts asked defendant to find them and, when defendant did so, gave defendant money to buy them from individual who had purchased them from thief, and defendant returned them forthwith to owner); *State v. Lopez*, 787 P.2d 1261, 1264 (N.M. Ct. App. 1990) (public policy encouraging private investigators to ferret out and return stolen goods supports availability of "intent-to-return defense"; thus, prospect of reward does not defeat defense to RSP, as long as property was never held "for any purpose other than to return goods to owner," such as "to use them or sell them to a fence"); *Dadon*, 640 N.Y.S.2d at 426 ("[W]here a person offers to return the property for a reward, the proper analysis is whether such conduct establishes an intent to appropriate the property to the possessor.").

[18]  *Godwin v. United States*, 687 F.2d 585, 588 (2d Cir. 1982); *cf. Mardirosian*, 602 F.3d at 4; *Baker*, 25 S.W. at 605; *Dadon*, 640 N.Y.S.2d at 427.

[19]  *Godwin*, 687 F.2d at 588; *see Calkins*, 906 F.2d at 1247; *Lopez*, 787 P.2d at 1264 (RSP conviction supported by evidence that defendant was present at time of theft and worked in concert with alleged thief to return property for reward).

"immediately and unconditionally turned over the goods to the rightful owner or to law enforcement officials."[20]

## C.

After hearing the parties' opening statements, the trial judge observed:

> [S]he learns from fliers that a computer has been stolen. She has it in her possession. She seeks to get money for it. She's on notice that it's stolen and doesn't turn it over to the police or anybody else until she arranges a meeting to profit by it. If that's the way the evidence comes out, it seems to me unless I am missing something that that would inexorably establish her guilt beyond a reasonable doubt.

Thus, the judge seemed to believe that the proffered behavior of responding to a previously offered reward was enough in itself to establish the "intent to deprive." At that point, therefore, the judge did not appear to recognize the possibility that expectation of a reward for return of stolen property could be consistent with innocent intent. Nor did the judge do so later when defense counsel argued rather opaquely the return-for-reward defense in his closing statement.

---

[20] *Calkins*, 906 F.2d at 1247; *see Simonson*, 214 N.W.2d at 681-82 (withholding or concealing stolen property with intent to return it only upon payment of reward constitutes intent to deprive, because "[o]nce defendant learned that property was stolen, he became obligated to immediately and unconditionally return the property to the owner or at least make it available for him to pick up").

On appeal, however, the government does recognize a return-for-reward defense, although in a curious, very limited way. The government acknowledges that if the evidence shows that the possessor of property, known to be stolen, intended to return it to the owner even without the reward, then the possessor's expectation of a reward, as advertised, could not be understood as an unlawful condition on the return.[21] Emphatically, however, government counsel argued that this case does not reflect that limited exception. According to the government, while not expressly conditioning return of the laptop on the announced reward, Lihlakha's behavior was tantamount to imposing an express, and thus unlawful, condition.[22]

---

[21] At oral argument, government counsel acknowledged:

> You can return stolen property to the rightful owner in the hope of getting a reward and perhaps an expectation that you may get a reward . . . . [But] [y]ou always have to have the intent to return the property even if you hope or expect to get a reward. . . . If she always has the intent to return the stolen property, there wouldn't be the requisite mens rea.

[22] Government counsel also argued:

> There is evidence in the record that appellant would only return the property if she was promised and paid the reward. . . . [T]here is evidence in the record from which a reasonable finder of fact would infer that she would not return the computer until she received the reward. . . .

(continued . . .)

We believe the government is right to acknowledge that mere expectation of a reward upon swiftly returning known stolen property to the owner or designee does not automatically establish the intent required by our statute for conviction of RSP. However, the government's understanding of the return-for-reward defense is based on a speculative scenario not only absent on the demonstrable facts of record but also unworkable on the hypothetical facts the government posits. The government presupposes proof of an intent that cannot in all likelihood be established, that is, what the possessor of stolen property would have done if the owner had revoked the reward – but did not. As to this case, more specifically, the government argues that Lihlakha brought known stolen property to the owner, Banks, who had announced a reward, but that there can be no reasonable doubt that if Banks had refused to pay the reward – a situation that never occurred (because the police intercepted the tender) – Lihlakha would have withheld the computer. On this record, there is no way to know what Lihlakha's behavior would have been in that situation – a hypothetical revocation of an announced reward that allegedly

---

(. . . continued)
> [S]he would only return [the laptop] for the reward that was offered. . . . She doesn't [say that] I was always going to give you back your computer.

would have transmuted Lihlakha's coming forward with the laptop into a postulated demand for payment upon returning it.

The legal issue, therefore, is not what Lihlakha would have done had the facts unfolded differently but, rather, whether the District's RSP law recognizes that a motive to obtain an announced reward is compatible with an intent to return known stolen property to its owner without imposing a forbidden condition that "deprive[s]" the owner of "the right to the property or [its] benefit."

We perceive such compatibility in § 223.6 (1) of the Model Penal Code, as elaborated by the Second Circuit's decision in *Godwin v. United States*[23] and refined by other case law.[24] We draw upon these understandings and conclude that a defendant may establish a return-for-reward defense that negates the requisite intent for receiving stolen property if the evidence shows that:

> (1) the reward had been announced, or was believed to have been announced, before the property was possessed or agreed to be possessed; (2) the person claiming the reward had nothing to do with the theft; (3) the possessor returned the property without unreasonable delay to the

---

[23] 687 F.2d 585 (2d Cir. 1982).

[24] See *supra* notes 16-20.

rightful owner or to a law enforcement officer; and (4) the possessor imposed no condition on return of the property.[25]

On this view of the law,[26] there is a problem here for the government. The trial judge made no express finding on whether Lihlakha's returning the property in response to a reward negated her criminal intent. We therefore have a concern: the trial judge elaborated no further on his understanding of RSP law in reward cases than he expressed at the time of opening statements; thus, he may well have failed to consider all relevant aspects of a defendant's motivation under the law applicable to RSP.[27] We turn, therefore, to the record to help inform our disposition of the case.

---

[25] See *supra* notes 16-20.

[26] Traditionally, RSP has been a specific intent crime. *See, e.g.*, *DiGiovanni v. United States*, 580 A.2d 123, 126 (D.C. 1990) (noting that "[t]o properly instruct the jury on the intent required for conviction of receiving stolen property," a trial judge must include an instruction on specific intent). However, as noted earlier, see *supra* note 4, a recent amendment to the RSP statute (inapplicable here) deleted the "intent to deprive" element. We express no opinion on how that amendment would affect the availability of a defense claim that the accused had obtained and possessed stolen property in order to return it to its rightful owner (whether for a reward or otherwise).

[27] This concern is intensified by the fact that the trial judge wondered why the government had not charged Lihlakha with theft, not mere RSP. The judge remarked after opening statements: "I don't know why they haven't charged theft since if she knew she had somebody else's property, she had a duty to turn it in

(continued . . .)

On the one hand, we cannot say that Lihlakha's testimony necessarily suggests that she, herself, imposed a condition on return of the laptop beyond mere expectation of the reward that Banks had announced.[28]  We therefore cannot say that her testimony was conclusive enough to demonstrate, as the government contends, that she was assuredly conditioning return of the laptop to Banks, contrary to the return-for-reward defense we recognize here.

On the other hand, from the testimony of Banks, Investigator Tarpley, and Lihlakha herself there is evidence sufficient for a finding that, by assisting Tony, Lihlakha had a culpable "intent to deprive" the rightful owner of her laptop

_____

(. . . continued)
under the law of the District of Columbia not to seek to profit . . . from it, and I think that would make out the elements of theft, but that isn't the charged offense."

[28]  Lihlakha testified that she had come into possession of the computer because "someone told me that there was a way I could make money in returning [it]," and that "[t]he only reason I got involved . . . was for the reward."  She further testified: "[I]t's [Banks's] property.  I didn't want it.  I'd rather give it to [her] so that I can go on my way.  We can work out [her] paying me later.  That was my standpoint, like it's not that urgent that I need the money right now."  On cross-examination, Lihlakha testified that: "[Banks] was telling me if I don't pay you today how do you know that I'll pay you.  I told her that the money wasn't why I was helping her.  I'm helping you because we're students, like I understand your plight. . . . [T]he reward was an incentive but it was not the only reason why I was helping her. . . .  In my mind if I can help anyone, that's how Howard is, that's the culture that we're brought up in that [at] Howard you stick together."

because she had something "to do with the theft." Specifically, based on the evidence of how Lihlakha came across Banks's laptop and her plan to split the reward with Tony, it would be reasonable for a fact-finder to infer that Lihlakha was aware that she was enabling either the thief or a fence to profit illegally from the theft, and thereby deprive Banks of the right to her property.[29] The trial judge, moreover, expressed an unequivocal belief that Lihlakha's testimony, apparently "fashioned on the fly," lacked credibility. And, aside from discarding Investigator Brown's testimony relating to the scope of the barring notice, the trial court found "no other reason to question the testimony" of the government's witnesses.

We note, however, that even though the evidence may be sufficient to sustain a conviction, it does not compel it. As an appellate court, we do not make findings of fact and therefore may not rule on our own reading of the evidence

---

[29] There is evidence that Tony, a local drug dealer whom Lihlakha had been dating, showed her a "sign" or "flyer" indicating a reward for a missing laptop; that Lihlakha obtained an HP laptop "for the low" from a "guy" she later identified as Tony; that when Banks said that the reward would be $1,000 but that the HP was not hers, Lihlakha told Banks she would "keep an ear out to see if your . . . laptop comes up"; that Lihlakha then went to see the "guy" (Tony) at "the same place where she had gotten the HP" and found in "the room where the other computers were" two Mac laptops, one of which belonged to Banks; and that Tony had told Lihlakha "he had a stolen laptop" for which they could split the reward, $300 for Tony, $700 for Lihlakha.

unaided by the trial court's findings as to the return-for-reward defense.[30] Nor may we assume at this time that the trial judge's skepticism about Lihlakha's credibility would determine the verdict when the judge evaluates the evidence anew in light of that defense.[31] Accordingly, we remand the record to the trial court for resumed consideration, and to make findings of fact responsive to the legal criteria we announce here.[32]

---

[30] "In a bench trial, the judge, as fact finder, has the right to make credibility determinations, weigh the evidence, and draw reasonable inferences of fact." *Joiner-Die v. United States*, 899 A.2d 762, 764 (D.C. 2006). However, this court – as in this case – reviews questions of law *de novo*. *See United States v. Felder*, 548 A.2d 57, 61 (D.C. 1988).

[31] In addition, this court has observed: "A defendant's unexplained (or unsatisfactorily explained) possession of recently stolen property may support a conviction of larceny . . . or receiving stolen property." *Byrd v. United States*, 598 A.2d 386, 393 (D.C. 1991) (en banc) (citation omitted) (citing *Blackledge v. United States*, 447 A.2d 46, 50 (D.C. 1982)). This announced "presumption," *id.*, (or, more accurately, permissible inference), however, does not compel a conviction, which rests, as always, with the fact-finder.

[32] *See* D.C. Code § 17-306 (2012 Repl.) ("The District of Columbia Court of Appeals may . . . remand the cause and . . . require such further proceedings to be had, as is just in the circumstances."); *see also McFerguson v. United States*, 770 A.2d 66, 76-77 (D.C. 2001) (remanding record for factual findings relevant to application of inevitable discovery doctrine and retaining jurisdiction over appeal); *Foster v. United States*, 699 A.2d 1113, 1115-16 & 1116 n.5 (D.C. 1997) (remanding rather than reversing outright where the evidentiary record was "sufficient to support a finding of guilt but insufficient on the precise grounds apparently relied upon by the trial court" following a bench trial). Although in a record remand the trial court, lacking jurisdiction, "does not . . . have the authority to amend the ruling that is on appeal," *Bell v. United States*, 676 A.2d 37, 41 (D.C. 1996), it would not amend the ruling merely by making findings, as requested, on

(continued . . .)

## IV.

The evidence is sufficient to support Lihlakha's unlawful entry conviction. The trial judge discredited Investigator Brown's testimony that the barring notice extended to Howard's entire campus, but Lihlakha herself did not dispute Brown's testimony that he had given her a copy of the barring notice, which excluded her from the dormitory towers (where Banks lived) and which the court found "speaks for itself." Moreover, Lihlakha testified that a Howard dean had warned her "not to go to" the dormitory towers. Finally, the trial judge credited Banks's testimony in which she stated that she saw Lihlakha standing outside of her dorm room, in violation of the barring notice.[33]

*****

For the foregoing reasons, we affirm Lihlakha's conviction for unlawful entry but remand the record for factual findings on the return-for-reward defense to

---

(. . . continued)
the return-for-reward defense. If the trial court were to accept the defense and transmit that finding to us, a reversal would be attributable to this court, having retained jurisdiction all along.

[33] *See Kelly v. United States*, 348 A.2d 884, 885-87 (D.C. 1975) (violation of validly issued barring notice of which defendant had notice constituted unlawful entry).

the RSP charge consistent with this opinion. We perceive no basis for augmenting the record with additional evidence, and we retain jurisdiction, awaiting return of the trial court's findings.

*So ordered.*

EASTERLY, *Associate Judge*, concurring: I join the majority opinion in recognizing a return-for-reward defense. With respect to the majority's delineation of that defense, I write only to ensure that there is no confusion about the fourth element, i.e., that "the possessor imposed no condition on return of the property." Majority Opinion at 20. Seeking a previously announced reward in exchange for the return of stolen property is not such an impermissible condition; rather, what an individual returning stolen property for a reward may not do is "impose a condition on return" of the stolen property beyond the promised reward. *See* Majority Opinion at 21.

I also agree with the majority that there is sufficient evidence from which a fact-finder could reject a return-for-reward defense in this case, although I think it is a close call. We acknowledge above that a defendant is not entitled to a return-for-reward defense if she had "something to do with the theft," Majority Opinion at 22, a disqualification that extends beyond assistance with the act of stealing the

property to assistance with the sale of stolen property for profit, otherwise known as fencing. Here, admissions Ms. Lihlakha made to Ms. Banks and Investigator Tarpley[34] support the reasonable inference that Tony, a.k.a. "Kool-Aid," the "guy" from whom Ms. Lihlakha obtained the Mac laptop, was acting as a fence. Although Ms. Lihlakha identified Tony as a drug dealer, one could infer that he had a side business in selling computers[35] belonging to other people.[36] By agreeing to split the reward for the stolen Mac laptop with Tony, Ms. Lihlakha arguably affiliated herself with his illegal business. Thus I agree that a fact-finder could find beyond a reasonable doubt that Ms. Lihlakha, through her dealings with Tony, had "something to do with" fencing stolen property, thereby losing her claim to a return-for-reward defense.

Lastly, I agree with the majority that our determination that the evidence is sufficient does not obviate the need for findings from the trial court regarding Ms. Lihlakha's entitlement to a return-for-reward defense. But on the subject of

---

[34] Unlike the majority, I do not think we can rely on Ms. Lihlakha's trial testimony to demonstrate that the evidence was sufficient. The trial court discredited this testimony. If the trial court thought Ms. Lihlakha's testimony was entirely unreliable, I do not see how we can point to what she said at trial as affirmative evidence on which a fact-finder could rely to find her guilty.

[35] He sold Ms. Lihlakha the HP laptop "for the low."

[36] For example, the multiple "Lauren" laptops.

remand, I do not understand why we are remanding only the record to the trial court and not the case. In so doing we retain jurisdiction, and thereby preclude the trial court from altering its verdict, see *Bell v. United States*, 676 A.2d 37, 41 (D.C. 1996), even as we acknowledge the possibility that, the sufficiency of the evidence notwithstanding, the trial court might reach a different conclusion about Ms. Lihlakha's guilt when it "evaluates the evidence anew in light of" this newly acknowledged defense. Majority Opinion at 23. Moreover, I see no point in retaining jurisdiction, since the only legal issue before us is sufficiency, and we have, with this opinion, resolved that issue.